MARY E. SMITH, Respondent, *against* EDMUND ALLT, Appellant.

(Decided February 4th, 1878.)

While the law is well settled in this State, that where a tenant for a year or more holds over the term the landlord has the option to treat him as a trespasser, or as a tenant for another year upon the same terms as those of the lease under which he had been occupying the premises; yet every continued occupation of the premises after the expiration of the term is not a holding over within this rule; and where upon the evidence it is not clear as to whether the tenant was not, with the consent of the landlord, remaining only pending negotiations for a new lease, with the understanding that in case a new lease was not made the tenant should surrender the premises and not be liable for any rent accruing thereafter, the question of whether or not there was a holding over should be submitted to the jury.

APPEAL by the defendant from a judgment of the Marine Court of the city of New York, entered on a decision of the general term of that court, overruling the defendant's exceptions to the direction of a verdict against him at trial term, and ordering judgment on the verdict.

The action was brought to recover $225, being a quarter's rent of No. 15 Dutch street in the city of New York, from May 1st, 1876, to August 1st, 1876, upon the allegation that the defendant had leased and occupied the premises for two years prior to May 1st, 1876, and had held over his term.

The defendant answered that on March 30th, 1876, a fire had occurred on the premises, by which they were damaged so as to be untenantable, and under the provisions of the lease he was discharged from the payment of any further rent until they were put in complete repair, and that they were not put in complete repair until May 25th, 1876. That from and before May 1st, 1876, he was negotiating with the plaintiff in regard to leasing the premises for another year after the expiration of the term, and that on May 8th, 1876, they having been unable to agree as to the rent to be paid, the plaintiff notified him that he must vacate the premises, and that thereupon he removed therefrom with all practicable despatch—on or about May 25th, 1876—and that he would have removed therefrom sooner had he not been prevented from so doing by the neglect and refusal of the plaintiff to put the premises in such a condition that he could remove his property therefrom.

The facts shown on the trial are stated in the opinion.

*John Henry Hull*, for appellant.

*Henry Stanton*, for respondent.

CHARLES P. DALY, Chief Justice.—The law is undoubtedly well settled, that where a tenant for a year or more holds over the term, the landlord has the option to treat him as a trespasser, or as a tenant for another year upon the same terms as of the previous lease (*Schuyler* v. *Smith*, 51 N. Y. 309). But that was not the point in this case. The question was whether there was a holding over within the meaning of this rule ; a point upon which there was so much doubt upon the evidence, that the judge upon the trial could not assume that the legal conclusion upon the testimony was, that the defendant held over the term, either as a trespasser or as a tenant; and that as the plaintiff had a right to treat the holding over as a tenancy she was entitled to payment, and that there was no question for the consideration of the jury.

By the clause in the lease, the rent was suspended in the

Smith v. Allt.

event of fire until the building should be put in complete repair. A fire occurred on the 30th of March, 1876, and the building was not completely repaired until the 25th of May following, a fact which is not only sworn to by the defendant, but also by the plaintiff's own witness, Quin. Two of the plaintiff's witnesses, Smith and Fowler, swear that the repairs were all finished on the 1st of May; but one of them, Fowler, who was the carpenter employed by the plaintiff to make the repairs, afterwards contradicted his previous statement. He was asked when he "got through the job of repairing and quit the building," and he answered, "I have been at work there within three weeks," which would be about the 8th of February, 1877. He was further asked, "When did you get through with the repairs of the damages occasioned by the fire?" and he answered, "About the 15th or 20th of May" (1876).

The term ended upon the 1st of May, 1876, and the defendant, as early as the preceding February, informed the plaintiff that he meant to give up the third floor, and would leave unless he got the fourth floor for $500, asking for a reduction of $200. Plaintiff thought the reduction too large; was willing to make a reduction of $100, but said:— "Let it stand over a little while, and *I will see about it.*" The fire occurred on the 30th of March. The fire was a very serious one: it burnt through the floor of the story occupied by the defendant, up to the fifth floor; his goods fell through to the floor below; the fire patrol took possession of the premises, and it was not until the 11th of April following that he got possession of his property. On the 5th of May, whilst the repairs were being made, the defendant met the plaintiff in the building and informed her that the fourth floor would not be enough for him. He showed her what he wanted. She said she would make the rent $700. He declined to pay that amount; offered $625, but she would not agree to it, and told him that he must go out as soon as he *possibly could,* which was not an easy matter, as he had heavy machinery, the removal of which was obstructed by the condition in which the building was, in consequence of the fire.

On the 8th of May following she sent for him; he saw her, and she told him he might have the premises he wanted for $650. He said he would not pay it, and she replied that she would put him out if he did not give it to her. She then said, "Mr. Allt, will you give me $650 for the room?" and he said, "I will not, Mrs. Smith;" upon which she replied:— "Well, Mr. Allt, *I don't want to give you any trouble*, but you must leave." He told her that whatever time he occupied the room of building after it was finished he was willing to pay for; to which she merely said, "Get out as quick as possible."

He was ready to move out on the 11th of May, but there was a difficulty in removing his heavy machinery, as the hoisting rope was burnt and scorched. In taking down some lumber the rope broke and damaged a part of the hoistway, and he could not get out his heavy turning lathes—weighing 1,500, 700 and 400 pounds—without a hoistway. On or about the 15th or 20th of May he applied to the plaintiff to put in a hoisting rope, but she was very angry; said she had something else to do besides fixing ropes; and he had to have the hoistway repaired himself; without which it would have been impossible to have got the machinery down.

He was ready to move out on the 11th of May, but through the causes above referred to was not able to do so until the 26th of May, and he vacated the premises entirely about the 1st of June. There was a conflict as respects some of these facts, which raised a question, not for the court, but for the jury. The defendant testified that he did no work upon the premises, and could not; and did not do any business there after the fire—that is, after the 30th of March.

As the rent was suspended from the time of the fire until the building was completely repaired; as the repairs were not finished until the 25th of May, and during that time the defendant could not do any work or carry on any business; and as he and the plaintiff had under consideration the occupation of a different part of the building from the part he had formerly occupied when it was repaired, but were unable to agree upon the rent which should be paid; and as his

remaining there after the 1st of May was because this matter was still under consideration ; and as the plaintiff, on the 8th. of May, when they could not agree, recognized his right to leave—requested him to do so as soon as he possibly could, declaring that she did not want to give him any. trouble, and necessarily implying that he was to have a reasonable time therefor under the circumstances ; and as three days after he was ready to move, but his moving out was delayed in consequence of the want of the hoistway, which he had to have put up himself ; and as he was engaged before the building was finished in moving out ; and as he vacated the. premises altogether a few days after the building was finished, I fail to see how it can be assumed, as a matter of law, that it amounted to a holding over beyond the first of May, which made him responsible for a year's rent thereafter. The rule in respect to the effect of holding over is to have a reasonable construction ; and to apply it in a case like this would be doing an act of injustice to the defendant, and doing. what the plaintiff herself did not intend, as is shown by her recognition, after the first of May, of the defendant's right to leave.

Where a tenant, under a yearly hiring, without saying any thing to his landlord, or where the landlord has not consented to any new or different agreement, holds over the term, the landlord has a right to assume that the tenant has concluded to remain for another year upon the same terms. But that is not this case. Here the parties were in negotiation, and such negotiation was continued over the first of May,. for the occupation of a different part of the building at a different rent ; moreover, the part which the defendant had. occupied was undergoing repairs and was not then in a condition in which either the defendant could use and enjoy it as before the fire, or in which any other tenant could come in and take possession of it. When that negotiation ended, as. the parties could come to no agreement, the plaintiff's orders were, as I have said, for the defendant to leave as soon as he could. In a few days thereafter he made an effort in good faith to leave, and that he did not get his bulky prop-.

Smith v. Allt.

erty away until more than a fortnight afterwards, was owing to the causes already recited. Where mutual acquiescence in a further term at the like rent is not inferable, the holding, to warrant the application of the rule, must be wrongful. It must be tortious in its character (*Schuyler* v. *Smith, supra*, pp. 314, 315), giving the landlord the right to treat the holding over as a trespass, or, if he so elects, as a continuation for another year upon the same terms. The tenant in such a case has no ground of complaint, as he had no right to remain after the expiration of his term, thereby enjoying the use of the premises and depriving the landlord of the opportunity of letting to another tenant. The plaintiff sought to show that the very day—the 8th of May—that the plaintiff told the defendant to leave as soon as possible, she gave him a written notice that as he had continued in occupation after the expiration of his lease, she would hold him as her tenant for another year upon the same terms. The two acts upon the same day—of ordering him to leave, and holding him as a tenant for another year from the first of May preceding—were not very consistent; but it is not necessary to dwell upon this, as the justice ruled out this testimony, and it did not, therefore, enter into either his deliberations or that of the general term upon the question of law.

The case, in my judgment, should have been submitted upon all the facts to the jury, as there was conflict as to some of them, and I think, therefore, that the judgment should be reversed.

Robinson, J., concurred.

Judgment reversed.