(34 Misc. Rep. 470.)

### KETCHAM et al. v. OCHS.

(Supreme Court, Trial Term, Kings County. April, 1901.)

1. TENANT HOLDING OVER.

Where a tenant holds over after a lease for 11 months, he becomes lia-ble for another term of the same length.

2. SAME.

A subtenant of premises demised under a lease expiring on the last day of April removed therefrom on the morning of May 1st all his prop-erty except certain mortgaged chattels, which he abandoned on the aft-ernoon of such day to the chattel mortgagee, with the key of the prem-ises. The mortgagee did not surrender the key to the landlord, nor re-move its chattels, until the 15th day of the month. Held, that the tenant in general was not thereby made liable to the landlord for another term of the same length.

Action by Herbert T. Ketcham and others against Ernest Ochs. Complaint dismissed.

Edward M. Grout, for plaintiffs.

Guggenheimer, Untermyer & Marshall, for defendant.

HOUGHTON, J. The defendant held a lease of the premises in question, expiring on the 30th day of April, 1899. The lease was for the term of 11 months, and commenced on the 1st day of June, 1898. The plaintiffs claim that the defendant held beyond his term, and thus bound himself to pay the rent at the stipulated price for another

11 months. On the trial a jury was waived, and whatever questions of law or fact were involved were submitted to the court. The testimony discloses that there is a domestic corporation by the name of "Ernest Ochs," of which the defendant is president. As early as September 6, 1894, one Edward Fitzpatrick, who apparently at that time occupied the premises in question as a saloon, gave a chattel mortgage upon the bar fixtures, tables, chairs, etc., therein to Ernest Ochs, the corporation. This mortgage was filed September 7, 1894, and the last renewal was September 1, 1898. The chattel mortgage states that it is given to the corporation, and describes the property and its location. The lease did not prohibit the defendant from assigning or subletting it, and Fitzpatrick was the actual occupant. The holding over consisted of the leaving of the bar fixtures, tables, chairs, etc., in the premises until the 15th of May. No business was done after the 30th of April. On the 1st of May, shortly after noon, Fitzpatrick removed from the building all the property which he considered belonged to himself, and from that time on the premises were closed, except for the removal of the bar fixtures by the brewing company. Fitzpatrick delivered the keys to a representative of the brewing company on the 1st of May, and the brewing company did not attempt to deliver them to the plaintiffs until the 15th of May. The chattel mortgage provided that the amount secured should be paid on the 7th day of September, 1894, and that Fitzpatrick was to remain in possession of the property until default, after which the mortgagee should have the right to take the property wherever it might be situated. This default had occurred, apparently, several years before the time in question. I think it must be said that Ochs, the individual, and not the corporation, was the tenant, and that the defendant must be held responsible for the acts of the subtenant, Fitzpatrick. The defendant is not responsible, however, for the acts of the corporation, the brewing company, in leaving the property upon which it held a chattel mortgage, and which was abandoned to it by Fitzpatrick, the mortgagor, on the premises. The question, therefore, narrows itself to this: Was the holding over by Fitzpatrick until the afternoon of May 1st such an act as gave the plaintiffs the right to treat the defendant as a tenant for another term of 11 months? On the trial my impression was that the well-settled rule with respect to tenants holding over did not apply to leases for odd periods of time. But an examination of the cases cited by counsel convinces me that if the defendant, through Fitzpatrick, did actually hold over, the rule would apply, and he would be bound for a succeeding 11 months. This question seems to have been quite exhaustively treated in the case of Wood v. Gordon (Com. Pl.) 18 N. Y. Supp. 109. In that case the court cites many cases outside of this state holding that the rule applies to a lease for odd number of months, and on principle there seems to be no good reason why the rule should not apply to such a period as well as to a tenancy from year to year or from month to month. But such holding over must be intentional and wrongful to have the effect of continuing the lease for an additional period, and it is not every holding over that constitutes a renewal of the tenancy. Her-

:ter v. Mullen, 159 N. Y. 28, 53 N. E. 700; Wood v. Gordon (Com. Pl.) 18 N. Y. Supp. 109; McCabe v. Evers (N. Y. City Ct.) 9 N. Y. Supp. :541; Smith v. Allt, 7 Daly, 492. In the above case of Herter v. Mullen, 159 N. Y. 28, 53 N. E. 700, the prevailing opinion distinguishes the case of Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, :and lays down the principle which must be considered as the last expression of the court of last resort with relation to the grounds for holding that a tenant who holds over renders himself liable for ,rent for another period. In that case O'Brien, J., says:

"The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year. But, whenever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, :must be voluntary."

Judged by this rule, can it be said that the holding over of Fitzpatrick until 2 o'clock of May 1st was such an act on the part of the ,defendant that the law implied a contract on his part to hold the ,premises for another period? Notices "To Let" had been put up on the building. No one was to move in on the 1st of May. No license had been taken out to do any business after the 30th of April. Fitzpatrick took all the property which he considered his own away from the premises on the forenoon of the 1st of May. He only waited at the place to give the brewing company the keys, so that they could remove the property covered by the chattel mortgage upon which he had defaulted, and which he assumed belonged to the company. Unlike the case of Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, the ,defendant had the right to sublet the premises. Fitzpatrick had to reimburse the defendant for only a small portion of the rent which he had paid. Can it be said, under these circumstances, the act of the defendant in occupying the premises in this manner on the 1st ,day of May was a voluntary act on his part, from which a contract to take the premises for another period of 11 months can be implied? I think not. While the rule with respect to tenants holding over is a strict one, yet it is a salutary one. It is always unwise to bend a well-settled rule of law for the purpose of relieving from hardship an individual case. Yet I cannot believe that the rule is so harsh that the failure to wholly move out of the premises for a portion of the day after the term expires, the moving continuing in the meantime, is such a holding over as binds the tenant for an additional term. If the reason for the rule is as quoted above from Herter v. Mullen, certainly no implied agreement can be inferred from such ,acts. My attention has not been called to any decisions applying the rule under such circumstances. If Fitzpatrick had continued to oc- ·cupy the premises until the 15th of May, there would have then been no question with respect to the defendant's liability; but, as has been pointed out, that occupancy was not by the defendant or Fitzpatrick, but by a third person.

The defendant raised, upon the trial, other questions with respect to the character of the complaint, and variance between the proof and the allegations. If the court is correct in the foregoing con- ·clusions, a consideration of those questions is unnecessary. The com-

plaint must be dismissed, and a decision may be prepared in ac cordance with the foregoing.

Complaint dismissed.