WATERMAN and another, Respondents, vs. LESAGE, Appel-
lant.

*February 3—February 22, 1910.*

*Landlord and tenant: Holding over: Renewal of lease: Presumption:
New agreement: Evidence.*

1. Where the tenant, after the expiration of a term fixed by a lease
   at one year or less, continues to occupy the leased premises
   without any new contract, the holding over may, at the option
   of the landlord, be considered a renewal of the prior lease for
   a like period and upon like terms.
2. The presumption of renewal of the lease in such case cannot be
   repudiated by proof of a contrary intention on the part of the
   tenant alone.
3. The parties in such a case may agree that the holding over shall
   be on different terms or for a different period; and such agree-
   ment may be proven like any other parol agreement.
4. A printed form on the back of rent receipts given to a tenant
   holding over, stating that the law requires tenants, when no
   lease has been signed, to give thirty days' notice before vacat-
   ing, did not constitute a new contract.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

*W. P. Crawford,* for the appellant, cited *Zitske v. Grohn,* 128 Wis. 159, 107 N. W. 20; *Leggett v. Louisiana P. E. Co.* 134 Mo. App. 175, 114 S. W. 92; *Eimermann v. Nathan,* 116 Wis. 124, 92 N. W. 550; *Stott v. Chamberlain,* 21 S. Dak. 520, 114 N. W. 683; *Millis v. Ellis* (Minn.) 122 N. W. 1119.

For the respondents there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.* They cited, besides other cases, *Auer v. Hoffmann,* 132 Wis. 620, 112 N. W. 1090; *West Concord M. Co. v. Hosmer,* 129 Wis. 8, 107 N. W. 12.

TIMLIN, J.   The trial court directed a verdict in favor of respondents for $60 rent due for the month of January, 1909, upon the following facts: On November 1, 1907, respondents leased to appellant by a written lease for the term of six months from that day the first floor and basement of a certain building at a rent of $60 per month payable on the first of each month in advance.   Shortly prior to the expiration of this six months there was a conversation by telephone between the parties which is given by the appellant as follows, respondent speaking:

" 'It's about time to make out a new lease; your lease will expire.'   He says I got to come over and sign a new lease. I says, *'Mr. Waterman,* I won't sign any more lease.'   I says, 'I will stay as long as I can; as long as I have to. I refuse to sign any more lease.'   There was nothing more said.   I quit talking to him right away."

The respondent's version is as follows:

"I asked him if he wanted a new lease for a year.   He says, 'I am going to remain here—got a lease—hold over or renew that lease.'   I told him it was satisfactory to me as long as I understood it that way.   The sum and substance of that talk between us was on my part that I wished *LeSage* to enter into another written lease and he declined."

The appellant continued in possession after May 1, 1908, paying his rent monthly for the six months expiring November 1, 1908, also continued in the same way for the succeeding months of November and December, but vacated the premises during the last days of December and did not occupy them thereafter. On November 30th appellant served written notice upon the respondents that appellant would vacate and deliver up the premises at the expiration of one month from that day, namely, December 30, 1908. To this respondent made reply by letter to appellant dated December 12th acknowledging receipt of this notice and stating that he would hold the appellant to the terms of the lease until May, 1909; would not accept surrender of the premises before that date nor consent that the lease be terminated. In the interval between the first conversation over the telephone and the giving of the written notice mentioned there were several conversations between the parties; one in June in which appellant said he was going to build and expected to get out of the leased premises in the fall. Respondent answered that he had better wait until next year, and tried to discourage him, but said nothing about his being obliged to stay for a six-months period. The next conversation was later and concerned the purchase of a furnace which appellant had in the leased premises and respondents bought, but it was specially agreed that anything which was done in relation to the furnace should not affect respondents' claim for rent. The monthly receipts which respondents gave appellant for rent had printed on the back the following:

"The laws of Wisconsin require tenants renting houses or buildings, when no lease has been signed, to give the landlord thirty days' notice before vacating said property, and in case a tenant vacates without giving said notice and the premises remain vacant said tenant is liable for rent of said premises for thirty days after he vacates. I earnestly hope all my tenants will observe this law and give thirty days' notice before vacating. The observance of this law will avoid much misunderstanding and possibly hard feeling, as no one cares to pay rent for vacant property.     L. E. WATERMAN."

In November, 1908, appellant learned that some one was looking for the building, found out who it was, and went to respondent and told him the school board was looking for that place and that if he could see Mr. Turnbull he might get him to take it, as long as appellant was going out. Respondent said he would do so. Appellant informed respondent that he intended to move into appellant's new building in November or December. At one of these conversations and in August or September the respondent said to the appellant: "You know you have a lease?" to which appellant answers: "No, I didn't have a lease, I canceled my lease." It further appeared that the respondents had on November 21, 1908, advertised these premises for rent, that they remained vacant during January, 1909, and that they were leased by respondents to some other party who moved in about February 1, 1909.

The appellant assigns error in the ruling of the court directing a verdict for the respondents for the January rent of the premises in question. Our statute (sec. 2187, Stats. 1898) provides that if a tenant for a year or more shall hold over after the expiration of his term he may, at the election of his landlord, be considered a tenant from year to year upon the terms of the original lease. This first appeared as a proviso to what is now sec. 2183, Stats. (1898). It does not include the instant case, because the appellant was not a tenant "for a year or more." In some states by statute such holding over creates a tenancy at will. *O'Brien v. Troxel,* 76 Iowa, 760, 40 N. W. 704; *German State Bank v. Herron,* 111 Iowa, 25, 82 N. W. 430. Aside from statutory provisions there is a diversity of judicial opinion regarding the effect of holding over. 1 Taylor, Landl. & T. (9th ed.) § 22. But the weight of judicial authority seems to be that, independent of statute, when the tenant, after the expiration of a term fixed by the lease at one year or less, continues to occupy the leased premises without any new contract, this may, at

the election of the landlord, be considered a renewal of the prior lease for a like period and upon like terms.　18 Am. & Eng. Ency. of Law (2d ed.) 405; *Wood v. Gordon,* 18 N. Y. Supp. 109; *Ketcham v. Ochs,* 34 Misc. 470, 70 N. Y. Supp. 268; 24 Cyc. 1017, 1018.　This presumption cannot be rebutted by proof of a contrary intention on the part of the tenant alone.　*Chicago v. Peck,* 98 Ill. App. 434; *Clinton W. C. Co. v. Gardner,* 99 Ill. 151; *Schuyler v. Smith,* 51 N. Y. 309.　The matter rests in contract, however, and landlord and tenant may agree that the holding over shall be on different terms or for a different period.　*Appleton W. W. Co. v. Appleton,* 132 Wis. 563, 113 N. W. 44; *Gilman v. Milwaukee,* 31 Wis. 563.　This agreement may be proven like any other parol agreement.　But the printed form on the back of the rent receipts could not alone constitute a new contract.

We are not able to find in the foregoing evidence anything to warrant an inference by the jury that a new contract was effected between the parties.　The appellant apparently assumed that he had the right at his own will to continue in possession after the expiration of the written lease on terms dictated to the respondents by him but not assented to by the respondents.　This, as we have seen, is not the law.　The option lay with the respondents.　Remaining in possession after having failed to obtain the respondents' consent to a modification of the terms of the written lease is all that is necessary to be established in such case in order to entitle the respondents to recover.　No rent other than that for January, 1909, is involved in this action, and we express no opinion upon the right of the respondents to recover the rent for February, 1909, after they had put other tenants in possession.　It follows that the judgment of the superior court must be affirmed.

*By the Court.*—Judgment affirmed.