Orville Realty Company, Inc., Respondent, *v.* Harry
T. Warnick, Appellant.

(Supreme Court, Appellate Term, First Department, October
Term — Filed November, 1920.)

**Landlord and tenant — summer home — when renewal of lease
not implied.**

> Where a tenant for a year or more holds over after the
> expiration of his term, the law implies an agreement for a
> similar term upon the terms of the original lease.'

> Where, however, from the terms of the lease or the con-
> duct of the parties some continuance of the tenancy beyond
> the original term has been contemplated, so that a holding over
> is not wrongful, or other circumstances demonstrate that both
> parties contemplate something other than an implied continu-
> ance of the term, the implication necessarily yields to the
> actual facts.

> Where it is clear that the parties to a lease of premises
> from May to November as a summer home were indifferent to
> the occupancy of the premises during the winter, and that the
> landlord's consent to the gratuitous and valueless occupancy
> of the premises by some of the tenant's furniture was given
> without a thought of a continued occupancy by the tenant, the
> complaint in an action for use and occupation of the prem-
> ises from November until the following April will be dis-
> missed.

Appeal by defendant from a judgment of the
Municipal Court of the city of New York, borough of
Manhattan, ninth district, in favor of plaintiff after
a trial by a judge without a jury.

Eugene L. Brisach, for respondent.

Austin, McLanahan & Merritt (George C. Austin
and W. Dickson Cunningham, of counsel), for
appellant.

BIJUR, J. This action is brought to recover from defendant for use and occupation of premises in Warren county, N. Y., for a period from November 15, 1918, to April 15, 1919, in the sum of $700. The undisputed facts are that the defendant for years had been occupying the property in question during the summer months under written leases from plaintiff's predecessor, and continued that course after 1916, when the plaintiff acquired the property. His occupancy was under a written lease, which for the first year of plaintiff's ownership ran from May, 1917, to October, 1917. The lease for the second year was dated May 1, 1918, and specified the term as from May 15, 1918, to November 15, 1918, at a rental of $700, payable in installments on the first days of June, July, August and September, although it is conceded that plaintiff actually paid $800. The premises leased included a house occupied by defendant and his family, another house occupied by his chauffeur, and a garage. The defendant each year at about the end of the term of his lease removed a few carloads of furniture to his winter home, and left what he called his summer furniture in the house which he had occupied. Plaintiff employed a caretaker who apparently occupied the chauffeur's house during the winter, received the keys from defendant, turned off the gas, electricity and water, boarded up the verandas and shutters, and looked after the safety of the place during the winter months. In October, 1918, when defendant followed his usual course of removing his winter furniture from the house, his chauffeur had a conversation with the president of the plaintiff corporation in which the latter " told me that he thought he could rent that cottage of mine for the winter, and I took the furniture and put it in the Warnick House (*i. e.* the house occupied by the defendant and his family personally)

Appellate Term, First Department, November, 1920.   [Vol. 113.

\* \* \*   I told him that I would take the furniture out of my house and put it in the Warnick cottage for the winter.'' In April, 1919, defendant wrote to plaintiff a courteous letter, saying among other things, '' Mrs. Warnick had decided to take a house at New London for the coming season, and we will therefore not consider renting the house at Luzerne.'' So far as the record discloses there was no reply to this letter, and defendant was not made aware of any claim by plaintiff against him until sometime in March, 1920, when he met plaintiff's lawyer by appointment.

Plaintiff, respondent, seeks to sustain the judgment upon the principle that '' where a tenant holds over after the expiration of his term the law will imply an agreement for a similar term upon the terms of the prior lease.'' I am far from being convinced that the rule applies except where the original lease is for the term of a year or more. See 4 Kent Comm. (14th ed.) *112; Taylor Landl. & Ten. (1844 ed.) 5; *Conway* v. *Starkweather,* 1 Den. 113; *Smith* v. *Allt,* 7 Daly, 492; *Kennedy* v. *City of New York,* 196 N. Y. 19; *Evertsen* v. *Sawyer,* 2 Wend. 507; 24 Cyc. 1031.

On the other hand, in *Wood* v. *Gordon,* 44 N. Y. St. Repr. 640; 18 N. Y. Supp. 109, this very question was discussed, and the conclusion reached that the rule applied even where the prior lease was for a term of less than a year. It may be that the reason for holding the rule to apply solely to cases where the prior lease is for a year or more is that it is historically connected with the implication of the technical lease '' from year to year '' and its connection with a tenancy '' at will.'' If, on the other hand, the rule is based on practical consideration giving rise to an implication of fact, the present is striking example of its inapplicability to cases of short leases which are generally seasonal. Here the premises were

used merely as a summer home for all practical purposes. Both owner and tenant must have regarded the rental fixed expressly for the summer months as compensation for the year's use of the premises, although practically they were intended to be availed of only during the summer.

We are not, however, called upon to decide this difficult and interesting question because whatever the limitation of the rule it is based on the notion that the holding over is without right or, as it is sometimes said, " wrongful,"[ and that thereupon the landlord has the option to treat the tenant either as a trespasser or as a tenant for a new term of a year at the rental and subject to the other applicable provisions of the old lease. *Kennedy* v. *City of New York, supra.* Where from the terms of the original lease or the conduct of the parties it is evident that some continuance of the tenancy beyond the original term has been contemplated, so that the holding over is not wrongful, or other circumstances demonstrate that both parties contemplate something other than an implied continuance of the term, the implication necessarily yields to the actual facts. Various illustrations of the application of this rule may be found in *Pickett* v. *Bartlett,* 107 N. Y. 277; *Luger* v. *Goerke,* 18 App. Div. 291; *Beeston* v. *Yale,* 75 id. 388, 390; *Herter* v. *Mullen,* 159 N. Y. 28; *Premier* v. *Meehaffe,* 150 N. Y. Supp. 494; *Smith* v. *Allt, supra.*

Reverting now to the facts of the instant case, and passing the consideration that as matter of common sense it was perfectly clear to both plaintiff and defendant that the lease was intended to be merely that of a summer home, that both parties were perfectly indifferent to the occupancy of the premises during the winter, that the plaintiff's consent to the gratuitous and valueless occupancy of the premises

by some of defendant's furniture during the winter was evidently given without a thought of continuing occupancy, we have the determinative elements that plaintiff's agent took complete actual physical possession of the property; that plaintiff announced his intention to endeavor to rent part of the premises for the winter and had defendant's chauffeur move some of the furniture for that very purpose, and finally, to dispel all possible doubt on the subject, plaintiff's president testified with commendable frankness on cross-examination: "Well, I did not think he was going to be there in the winter. Q. You never had any idea that he intended to hold over as a tenant? A. Yes. Q. And live there? A. Not for the winter." This frank avowal explains the confirmatory delay of about sixteen months in asserting the claim now sought to be sustained.

For the reasons stated, the judgment should be reversed, with thirty dollars costs, and the complaint dismissed, with costs.

DELEHANTY and WAGNER, JJ., concur.

Judgment reversed, with thirty dollars costs.