LAMEW *v.* TOWNSEND.

Opinion delivered January 31, 1921.

1. LANDLORD AND TENANT—TENANCY FROM YEAR TO YEAR.—A tenancy from year to year may be created either by express agreement or by a lease for one or more years and the holding over of a tenant and payment of an annual rental after the first year without a new contract.

2. LANDLORD AND TENANT—LEASE—TERMINATION.—Under a lease for one year with option to continue from time to time as long as conditions are satisfactory to both parties, the continuance of the lease after the first year was conditioned upon its being mutually satisfactory, though neither party had a right to act arbitrarily or capriciously, and each was entitled to reasonable notice from the other of intent to terminate.

3. LANDLORD AND TENANT—REASONABLE NOTICE TO TERMINATE LEASE.—What is a reasonable notice to terminate a tenancy from year to year depends upon the custom of the country and the circumstances of the particular case, and is a question for the jury.

4. LANDLORD AND TENANT—NOTICE TO TERMINATE LEASE.—Notice to terminate a lease from year to year pursuant to a lease giving such right after the first year should have been given by the landlord before the end of the year; otherwise the law will presume an intention to extend the lease for the remainder of the new year.

5. LANDLORD AND TENANT—NOTICE TO QUIT.—Where a lease for a year contained an option to continue subject to the approval of both parties, and the landlord gave notice during the second year to terminate the tenancy at the end of that year, notice to quit need not be served on the tenant by the landlord until after the beginning of the third year, as the landlord had a right to assume that the tenant would not hold over if he had previously given notice that the lease would terminate at the end of the second year.

Appeal from Lawrence Circuit Court, Eastern District; *D. H. Coleman,* Judge; reversed.

*W. A. Cunningham,* for appellant.

1. The contract created a tenancy from year to year; and, if it did not, a tenancy of that kind resulted from the holding over by the tenant and the payment of rent from year to year without a new contract. 1 Taylor on Landl. & Ten., p. 39; 61 Ark. 377.

2. Unless a different length of time is fixed by the contract or by statute, a tenancy from year to year can not be determined except by notice given at least six months before the end of the current year. Taylor on Landl. & Ten., p. 90; 65 Ark. 474; 70 *Id.* 351. No proper notice to quit was given, and it was error to instruct a verdict, as the court will give the evidence its strongest

probative force in favor of appellant. This is too well established to need a citation of authorities.

*Smith & Gibson* and *A. S. Irby*, for appellee.

1. The cases cited by appellant are not applicable, and the contention that the written contract referred to is a contract from year to year, and therefore appellant was entitled to six months' notice to vacate is not sustained by authority. The court below construed the contract to mean a tenancy at will, but it was a contract for lease of lands at will. 40 How. Pr. 401 (N. Y.); 11 Gratt. (Va.) 527; 10 Tex. 137; 4 Litt. (Ky.) 232; 14 Am. Dec. 122.

2. There was no question of fact for a jury, and it was not error to direct a verdict, as there was no evidence for a jury to pass upon. Appellee contends (1) that if appellant undertakes to hold, as he did under the written contract, it was merely a tenancy at will, and she had a right to evict him under three days' notice in writing; (2) that if the written contract was abrogated or set aside in the fall of 1917, under appellant's own testimony he could not claim possession of the place for more than one year at a time. There was nothing to submit to a jury, and the testimony shows it was a contract from year to year and there was nothing for a jury to pass upon. It was a contract for a tenancy at will, and the court below so properly held.

Smith, J. This is an action in unlawful detainer, and the decision of the case turns upon the construction of the following contract:

#### "Rent Contract.

"This contract, entered into this day by and between Belle Townsend, party of the first part, and W. L. Lamew, party of the second part, witnesseth:

"The party of the first part has this day let and leased to the party of the second part for the period of one year, with the option to continue from time to time as long as conditions are satisfactory to both parties hereto, the farm known as the Lamew place, containing

234.50 acres, more or less (in Lawrence County, Arkansas), at a yearly rental of one-fourth of all cotton and one-third of all corn grown and to be grown on the said place during the pendency of this lease, cotton to be delivered at gin, and corn in crib on the farm. The party of the second part agrees to farm the place in a farmer-like manner, and turn over to the party of the first part one-fourth of all cotton grown on the place and one-third of all corn grown on said land, cotton to be delivered at gin and corn in crib on farm.

"Should party of the second part fail to work his crop in a good and farmer-like manner at any time, party of the first part reserves the right to enter and take possession of said crop and work it and deduct same from second party's share of said crop.

"Signed, September 21, 1916.

"Belle Townsend,
"By Roy Townsend."

The court below construed the contract as creating a tenancy at will and directed a verdict in favor of the landlord.

It appears that a portion of this land was taken away from Lamew in 1918, and another portion in 1919; but Lamew testified that this was not done in abrogation of the contract, but was a mere release of a portion of the land from the contract, and that the part retained by him was worked upon the terms and conditions specified in the contract. According to appellee, the contract was abrogated in the fall of 1917; but, as this testimony conflicts with that of Lamew, we must accept his version of the matter, inasmuch as a verdict was directed against him.

Appellant insists that the contract created a tenancy from year to year, and that if it did not do so a tenancy of that character resulted from the holding over of the tenant and payment of rent from year to year without a new contract.

A tenancy from year to year may be created either by an express agreement, or by a lease for one or more

years and the holding over by the tenant and the payment of an annual rental after the first year without a new contract. *Belding* v. *Texas Produce Co.,* 61 Ark. 377.

In the case of *Waterman* v. *LeSage,* 142 Wis. 97, Judge Timlin, speaking for the Supreme Court of that State, said that, independent of statute, the weight of judicial authority appeared to be that, when a tenant, after the expiration of the term fixed by the lease at one year or less, continues to occupy the leased premises without any new contract, this may, at the election of the landlord, be considered a renewal of the prior lease for a like period and upon like terms. But he also said that the matter rests in contract, and that the landlord and tenant may agree that the holding over shall be on different terms, or for a different period, and that the agreement may be proved like any other parol agreement.

So here the effect of this contract and the actions of the parties under it would have been to create a tenancy from year to year if there had been no language in the contract to indicate a contrary purpose. But we must give some effect to the provision of the contract that it is "to continue from time to time so long as conditions are satisfactory to both parties hereto."

Evidently the parties contemplated that the tenancy might continue for more than a year; but the continuance was conditional—the condition being that it remained mutually satisfactory. So long as the contract continued in force, its terms governed as to the respective shares of the crops which each party should have, and the place of division, and the manner of the cultivation of the land. The parties had the right to make that kind of contract, and it is our duty to give it effect. The dissatisfaction contracted against might have arisen within less than six months of the end of the year; and, even though these differences had previously arisen, they might become so accentuated when the crop was being harvested that one or the other of the parties might

desire. to terminate the tenancy. They had mutually reserved the right to do so. In fact, this would appear to be the very contingency against which they have contracted. If the difference arose in the first half of the year, there would be time for the common-law notice of six months of the intention to terminate the tenancy, and the language quoted would be surplusage, as the right to terminate could be exercised, whether cause for dissatisfaction had arisen or not. But the language quoted gave that right whether the dissatisfaction arose in the first half or the last half of the year.

Of course, neither party had the right to act arbitrarily or capriciously, and each party was entitled to reasonable notice from the other of an intent to terminate the contract. As to what is reasonable notice depends upon the customs of the country and the circumstances of the particular case. It is a question of fact for the jury. And this notice of dissatisfaction should have been given before the end of the year, otherwise the law will presume a mutual intention to extend the contract for the remainder of the new year into which their operations had extended. *Hayes* v. *Goldman,* 71 Ark. 251. This is true because the contract contemplated a continuance until there was notice to the contrary. *Bluthenthal* v. *Atkinson,* 93 Ark. 252.

The notice to quit need not have been served until after the beginning of the year, as the tenant would have had the right to complete the year's occupancy, and the landlord would have had the right to assume that the tenant would not hold over if he had previously given the tenant notice that the tenancy had ceased to be satisfactory. The notice to quit was served January 5, 1920, and this service was in time if the tenant had previously been given the notice to which he was entitled that the landlord desired to terminate the tenancy.

Lamew says, however, that the first notice which he had that the tenancy had ceased to be satisfactory and would be terminated was the notice to quit; and if this is true, the landlord has failed to give the notice required.

This question of fact should have been submitted to the jury, and for the error in not doing so the judgment will be reversed and the cause remanded.

McCulloch, C. J. (concurring). I think that the holding over by the tenant after the expiration of the first year expressed in the written contract created a tenancy "from year to year," and that notice for six months prior to the end of the year was essential to terminate the tenancy. Holding over under the particular contract involved in this case created a typical tenancy from year to year. The original contract did not bind the parties to a renting for more than one year, and at the end of that period the contract terminated itself at the will of either party without notice. It may be true, as stated in the opinion of the majority, that the language of the contract evinces an intention to continue the tenancy beyond the term of one year specified therein, but the language is ineffectual to constitute an agreement to so extend it. It is not obligatory on the part of either the landlord or the tenant to extend the term beyond one year. It then took some further action on the part of the landlord and tenant to extend the term. Usually in such cases the mere holding over by the tenant beyond the stipulated term constitutes a tenancy at will, and acceptance of rent by the landlord is necessary to create a tenancy from term to term; but under some circumstances acquiescence by mere silence on the part of the landlord would create a tenancy from term to term. The holding over of farm lands and preparations for the planting of a crop would doubtless be circumstances which would justify any court in holding that a tenancy from term to term had been created if no objection was made by the landlord, even without accepting rent.

The law on this subject is fully treated by Mr. Underhill in his work on Landlord and Tenant (vol. 1, §§ 92, 97). Many cases are cited in support of the law there announced. The text contains the following statement which is controlling, I think, in the present case: "Lease

of land for one year, with a privilege of continuing the same from year to year, so long as both parties agree, creates a tenancy from year to year.''

In the Wisconsin cases cited in the opinion of the majority (*Waterman* v. *LeSage*, 142 Wis. 97), the court said: ''But the weight of judicial authority seems to be that, independent of statute, when the tenant, after the expiration of a term fixed by the lease at one year or less, continues to occupy the leased premises without any new contract, this may, at the election of the landlord, be considered a renewal of the prior lease for a like period and upon like terms.''

I fail to see how the instant case can be distinguished from the very numerous cases on this subject because there is an unenforceable agreement in the contract to continue the tenancy for a longer period than one year. There is no conflict in the authorities to the effect that in a tenancy from year to year notice for six months preceding the end of the year is essential to a termination of the tenancy. Underhill on Landlord and Tenant, § 112.

I agree to a reversal of the case, but I think the court bases the reversal on erroneous grounds, and that the majority are inconsistent in holding that a tenancy from year to year was not created, but that reasonable notice was essential to terminate the tenancy. If there was no tenancy from year to year, then the term ended at the end of each year, and either party had the right, without notice, to decline a further extension. If there was no tenancy from year to year, then the judgment ought to be affirmed. However, my conclusion is that there was a tenancy from year to year, and that the notice of six months was necessary in order to terminate it.