RIVERSIDE LAND COMPANY *v.* BIG ROCK STONE
& MATERIAL COMPANY.

Opinion delivered June 22, 1931.

1062

1064

*Frauenthal, Sherrill & Johnson* and *Donham & Fulk,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

HART, C. J., (after stating the facts). Counsel for appellant seek a reversal of the decree under the common-law rule adhered to by this court that a tenant under a lease for a term of years by holding over at the end of the term without any new agreement, and paying rent according to the terms of the lease, which has been accepted by the lessor, becomes a tenant from year to year. *Belding* v. *Texas Produce Co.,* 61 Ark. 377, 33 S. W. 421; *Lamew* v. *Townsend,* 147 Ark. 282, 227 S. W. 593; and *Jonesboro Trust Co.* v. *Harbough,* 155 Ark. 416, 244 S. W. 455.

We do not think the principle of law announced in these cases has any application under the terms of the lease under consideration. In these cases the leases were for a fixed term, and contained no provision looking to their renewal or the extension of their term. Here the parties provided for the continuance of the lease upon the compliance with certain conditions prescribed therein. This distinction is expressly recognized in *Lamew* v. *Townsend, supra.*

This court has also recognized that there is a difference between a stipulation for the renewal of a lease and one for its extension. The reason is that where a renewal is provided for, a new lease should be executed or at least the lessee should do everything required of him to procure the execution of a new one so that the failure of

the lessor to execute a new lease would work an estoppel against him. In the case of an extension clause, the execution of a new lease is not necessary, and the parties continue under the provisions of the original lease by complying with the extension agreement. *Neal* v. *Harris,* 140 Ark. 619, 216 S. W. 6; and *Keith* v. *McGregor,* 163 Ark. 203, 259 S. W. 725. Other cases recognizing and upholding this principle by this court might be cited, but the question is so well-settled in this State that we deem it unnecessary to do so.

Counsel for both parties in this case have called our attention to numerous decisions of courts of last resort of other States upon the question, but for the same reason we do not deem it necessary to cite or review them. Most of them may be found under the case notes to 29 L. R. A. (N. S.) 174, and 64 A. L. R. 316.

Where no notice of extension to be given by the lessee is provided for in the lease itself, the lessee, by retaining possession of the premises after the expiration of the terms of the lease, will be deemed to have elected to renew or extend it according to the terms of the lease. *Hays* v. *Goldman,* 71 Ark. 251, 72 S. W. 563.

Where a lease provides that the lessee shall have the privilege of renewing the lease or extending its provisions upon giving notice for a certain length of time before the termination of the lease, the giving of such notice constitutes a condition precedent, upon the nonperformance of which the right of renewal or extension of the lease may be forfeited. *Bluthenthal* v. *Atkinson,* 93 Ark. 252, 124 S. W. 510. That case also holds that, where the form of the notice is not prescribed in the lease, it may be given verbally. The court also expressly recognized in that case, although the giving of the notice was a condition precedent, it might be waived by the parties. The court held that under the facts of that particular case, however, there was no waiver.

In an extensive case note to 64 A. L. R. 316, it is said that the general rule is that where a lessee, having

a privilege of extending the lease, holds over, even without any notice to the lessor of his election to extend the lease for a further term, his holding over constitutes an election so to extend, and he is entitled as against the lessor to hold for a further term. Among the cases cited in support of the rule is *Lamew* v. *Townsend*, 147 Ark. 282, 227 S. W. 593. To the same effect see 16 R. C. L. 894.

In the case at bar, the lease prescribed as a condition precedent to the exercise of the right by the lessee to extend the lease the giving of notice in writing within a specified time before the expiration of the first term of the lease, and such condition must be complied with or it must be waived by the lessor. There is no contention in the present case that this condition was complied with; but it is strongly insisted that the compliance with such condition was waived by the lessor. Other cases holding that provisions of this sort with regard to the giving notice for the extension of the lease may be waived by the parties are the following: *Kramer* v. *Cook*, 7 Gray (Mass.) 550; *Long* v. *Stafford*, 103 N. Y. 274, 8 N. E. 522; and *Probst* v. *Rochester Steam Laundry Co.*, (New York) 64 N. E. 504.

It is plain from reading the case of *Bluthenthal* v. *Atkinson*, 93 Ark. 252, 124 S. W. 510, that where the lease provides that the tenant must give notice of his intention to renew or extend the lease, a failure to give such notice within the required time will justify the landlord in treating the lease as not extended or renewed. It is equally plain from the opinion in that case that the lessor may waive such notice, and that he will be treated as having done so where the facts warrant it.

Bearing in mind these settled principles of law, we now come to the question whether the chancery court was justified in finding under the facts that the written notice for an extension of the lease was waived by the parties. Under the provisions of the lease, the parties contemplated that the term of ten years provided in the lease might be extended by repeated exercise of the power

given by the lease until the whole term amounted to ninety years. It is true that no notice in writing was given by the lessee under the terms of the lease before the expiration of the first term. It is equally certain that the parties contemplated an extension of the lease.

The business to be carried on upon the leased premises was that of excavating sand from the bed of the Arkansas River, storing it in bins, and shipping it over the tracks of an adjacent railroad. The leased premises only contained 4½ acres of land. This was sufficient for the purpose. The sand is taken from the bed of the Arkansas River by extensive machinery erected for that purpose, stored in the bins on the leased premises, and then carried by switch tracks on the leased ground to the right-of-way of an adjacent railroad.

The original lessee was Mord Roberts, who, pursuant to a provision of the lease, assigned it to a corporation of which A. C. Butterworth was president. The latter gave as an excuse for not complying with the provisions of the lease as to notice that he thought from what Roberts had told him that the lease was for ninety years, and that the provision only related to the appraisal which fixed the rental value of the property. In any event his company continued the operation of the plant after the expiration of the first ten-year period and continued to pay the rent under the terms of the original lease. This showed that the lessee expected to extend the lease under its terms; for he will be presumed to have known what the provisions of the lease were. On the other hand, the fact that the lessor accepted the rent knowing that the lease had a clause looking to an extension of its provisions under certain terms tended to show that it did not intend to assert its right of forfeiture but waived its right to declare the lease at an end.

This view is made manifest by the conduct of the parties. It seems that Butterworth had charge of the matter for appellee and Wright for appellant. Butterworth approached Wright about the matter at a club

house of which they both were members. They continued to negotiate about the extension of the lease generally with regard to the new rental for more than a year after they first took up the matter. Wright told Butterworth that his company had been offered a rental of $75 a month. During the latter part of 1921, Butterworth accepted this proposal for the new rent for the balance of the second ten-year period. Thereafter, he continued to pay rent in that amount, and appellant continued to accept it for the balance of the second ten-year period. The question of the lease being terminated at the end of the first ten-year period did not come up again until appellee gave the notice for a second extension near the end of the second ten-year period. This of itself showed that the parties considered that the lease had been extended by fixing a new monthly rental contract to begin in January, 1922. It will be remembered that the lease expressly provided for an extension of the term for successive ten-year periods until the full term of ninety years was reached by giving the written notice and appointing appraisers to fix the rental value for the new extension period.

Butterworth testified that Wright agreed to an extension of the lease at a monthly rental of $75 per month in advance beginning from the first day of January, 1922. Wright also testified that he thought this new rental was for an extended time of the lease. He was asked the specific question if it was for the remaining period or the next ten-year term, and replied, ''Yes.'' It is true that the two remaining directors of appellant company testified that they considered that the lease had expired at the end of the first ten-year period when the lessee failed to give the written notice, but it does not appear that they ever acted upon this conclusion or notified the lessee that such construction would be put into effect. They admitted that Wright had authority to act for the lessor and that he did do so. It was plain from the testimony of Wright that appellant did not intend to declare

the lease forfeited because of the failure of the lessee to give the required notice, but that it intended to waive the giving of such notice and actually did so by agreeing to the advancement and accepting it for the balance of the second ten-year period.

Butterworth testified that, relying upon this, appellee after the beginning of the year 1922 made improvements upon the leased premises of the estimated value of $40,000, which it would not have done had it understood that it was continuing under a month to month or year to year rental. It is true that the main value of the improvements was machinery which appellee had a right to remove when its lease expired, but a considerable amount of it was expended in erecting bins and other buildings which would necessarily have to be left on the leased premise. Then too, according to the testimony of Butterworth, which is not attempted to be disputed, the machinery would not be of much value as second-hand machinery. It could only be used in the operation of plants of this sort, and the situation of the ground at that point with relation to the Arkansas River and to an adjacent railroad made it valuable for the purpose for which it was used. Another site equally favorable for the purpose would have to be secured before the machinery could be used by appellee. In any event, according to the testimony of Butterworth, which was not attempted to be disputed, improvements of the estimated value of $40,000, would be practically lost to appellee if the lease should be construed to be terminated at the end of the first ten-year period. Appellant under the circumstances must have known that these improvements were contemplated, and that they were actually made by appellee after the advanced rental was fixed upon, and appellee commenced to pay it in advance upon the first day of each month.

When we consider that the lease itself contemplated successive extensions of the ten-year period upon the fixing of a new rental at the end of each period, and,

that the amount of that new rental was fixed in pursuance of the terms of the lease, we are of the opinion that these facts, considered in connection with the surrounding circumstances, warranted the chancellor in finding that the notice in writing required to be given was waived by the lessor. Therefore, the decree will be affirmed.