ARTHUR G. BRICKEY, SR., ADMINISTRATOR v.
B. L. LACY ET AL

5-4744                                          435 S.W. 2d 443

Opinion Delivered December 23, 1968
[Rehearing denied January 27, 1969.]

*Mitchell D. Moore* for appellant.

*Bruce Ivy* and *James E. Hyatt Jr.* for appellees.

GEORGE ROSE SMITH, Justice.   This unlawful detainer action was brought by the appellant, as administrator of the estate of Mabel Brickey Ayres, to recover possession of a 177-acre farm owned by Mrs. Ayres at her death on September 7, 1963.   By making bond the plaintiff obtained possession of the property during the pendency of the suit, the defendants being unable to make a cross-bond to retain possession.   Trial to a jury resulted in a $16,750 verdict for the tenants, Mr. and Mrs. Lacy, upon their cross-complaint for damages for wrongful eviction.   The appellant urges eight points for reversal, which for discussion we will condense into four contentions.

First, the appellant argues that the trial court was wrong in treating the contractual relation between Mrs.

Ayres and the Lacys as a tenancy from year to year, requiring six months notice for its termination. This argument is without merit.   From 1949 through 1963 Lacy farmed the land, at first under an oral agreement with Mr. Ayres and after his death under a similar agreement with Mrs. Ayres.   The rent was paid on an annual basis, and the arrangement continued in force through all those years.   Upon the undisputed facts the tenancy could only have been one from year to year. *Peel* v. *Lane,* 148 Ark. 79, 229 S.W. 20 (1921); *Lamew* v. *Townsend,* 147 Ark. 282, 227 S.W. 593 (1921).

Secondly, the appellant unsuccessfully objected, under the dead man's statute, to Lacy's testimony that by his agreement with Mrs. Ayres he was to pay as rent one fourth of the cotton crop and $20 an acre for the rest of the land.   We find no prejudice, not only because there was other testimony to the same effect by the witness Robbins, but also because in determining the appellees' maximum recovery we attach no importance to the terms of the year-to-year agreement.

Thirdly, the appellant complains of the trial court's refusal to allow the introduction of a probate court order by which he as administrator was authorized to bring this action.   No error occurred.   The *ex parte* order was not binding upon the Lacys, yet it might have misled the jury into thinking that the probate court had made a controlling determination that the administrator had a valid cause of action.

Finally, the amount of the verdict is questioned, with reason.   Lacy's proof encompassed items of pecuniary damage totaling only $15,575, according to the appellees' own brief, plus an apparent allowance by the jury of an additional $1,175 for the mental anguish suffered by the Lacys as a result of having been evicted. No authority is cited for the novel notion that a breach of contract like this one gives rise to a compensable claim for mental anguish, nor is there any such rule of

law. Restatement, Contracts, § 341 (1932). Consequently we confine ourselves to the Lacys' proof of pecuniary losses.

In unlawful detainer cases we have adhered to the measure of damages stated in *McElvaney* v. *Smith*, 76 Ark. 468, 88 S.W. 981, 6 Ann. Cas. 458 (1905): "When a landlord unlawfully evicts a tenant from the premises, the tenant is entitled to recover as damages whatever loss results to him as a direct and natural consequence of the wrongful act of the landlord. If the rental value of the place from which he is evicted is greater than the price he agreed to pay, he may recover this excess and, in addition thereto, any other loss directly caused by the eviction, such as the expense of removal to another place." See also *Byers* v. *Moore*, 110 Ark. 504, 163 S.W. 147 (1913).

Mrs. Ayres died on September 7, 1963—too late in the year for her administrator to terminate the year-to-year lease by giving the required notice six months before January 1, 1964. The first notice to quit given by Brickey as administrator was in a letter dated November 27, 1963. This action was brought in the following February, when the Lacys were evicted by the sheriff.

Inasmuch as the jury allowed all the precuniary losses enumerated by Lacy, our concern is merely to eliminate those not supported by substantial evidence or not allowable as a matter of law. Lacy testified that after receiving notice that he would not have the farm in 1964 he diligently tried to rent other farm land in Arkansas, Mississippi, or Missouri. He was unsuccessful, because by then all the available land had been rented to others. Lacy testified that he spent $459 in trying to find another place, that he had already spent $250 in preparing the Ayres place for cultivation in 1964, and that he spent $83 in moving his equipment after he was evicted. We consider all three items to be properly allowable.

When Lacy was evicted he had a combine and a tractor which he was buying on credit. As a direct result of his wrongful eviction he was unable, for lack of income, to keep up the payments on either machine. He thereby lost his equity of $3,800 in the combine and $1,800 in the tractor when the equipment was repossessed by the seller. We think the jury was justified in finding that those losses, in the language of the *McElvaney* case, were "a direct and natural consequence of the wrongful act of the landlord." That is not true, however, of an asserted loss of a $1,200 equity in a truck, because Lacy did not buy that vehicle until 1964, after he had been evicted.

Ordinarily the element of damage that can be most convincingly proved by an evicted tenant is the difference between the rental value of the property and the price that he agreed to pay. Here Lacy contends in his brief that upon that score he is entitled to recover $7,983. That sum, however, was the entire amount of rent paid by his successor tenant in 1964. Of course that is not the measure of Lacy's damages. The only definite testimony showing that his rental agreement was more favorable than that of his successor is his undisputed proof that in 1963 his rent for the same property amounted to only $6,346.74. Even viewing the case as favorably as possible in support of the verdict, we cannot sustain a loss-of-rental-value award exceeding $1,636.26, the difference between the 1963 rent and the 1964 rent.

To sum up, we find that an allowance of only $8,028.26 is supported by the record. In such a situation our practice is to reduce the judgment to the highest allowable figure and to affirm it as so modified. *Kane* v. *Carper-Dover Merc. Co.*, 206 Ark. 674, 177 S.W. 2d 41 (1944); *First Nat. Bk. of Minneapolis* v. *Malvern*, 171 Ark. 994, 287 S.W. 185 (1926).

It is so ordered.

Fogleman, J., concurs.

John A. Fogleman, Justice.    I concur in the result, but there are two particulars in which I do not entirely agree with the majority opinion.

Although I agree that the probate court order authorizing appellant to bring this action should not have been admitted into evidence, I think it would have been admissible if appellees had questioned his capacity to to sue as administrator.    Without probate court action appellant would not have been entitled to possession of the real estate in any event.    When the circuit judge sustained the objection to the introduction of the order, he stated that no such issue had been raised.    The record sustains him.

I have serious reservations about the right of a dispossessed tenant to recover for his equity in farming equipment repossessed.    It strains credulity to believe that an equity as great as that claimed by Lacy would be totally lost.    I think it might well be that this element of damages was too remote and speculative to warrant consideration as a direct and natural consequence of the eviction.    Yet, the abstract reveals no objection to the testimony offered in this regard.    No objection is shown to have been made to any instruction given by the court.    It does not appear that appellant offered any instruction to the jury to limit its consideration of the testimony as to damages, or any suggested modification or limitation of the instruction given on the measure of the tenant's damages.    It must be assumed that the jury did consider this testimony.    The impropriety of considering this element of damages is not argued here.    Appellant's argument is directed toward the excessiveness of the verdict.

Appellant's only argument here with regard to this evidence is that Lacy's testimony was self-contradicting, unworthy of belief, unsupported, indefinite, con-

fused, and vague. These objections, urged here for the first time, were actually resolved by the jury verdict.

For these reasons, it cannot be said that the jury erroneously included loss of equity in farming equipment.