Jerry GRAY *v.* J. Sid DAVIS

CA 80-246                                     606 S.W. 2d 607
Court of Appeals of Arkansas
Opinion delivered October 29, 1980

*Hixson & Cleveland*, by: *R.H. "Buddy" Hixson*, for appellant.

*Witt & Donovan*, by: *Ernie Witt*, for appellee.

Steele Hays, Judge. On July 20, 1976, appellee, J. Sid Davis, entered into a "Co-operative Farming Agreement" with the Arkansas Game and Fish Commission, under which he was permitted to cut hay, plant and harvest crops on lands owned or controlled by the Commission. Under the Agreement, appellee was required to leave a portion of the crops in

the fields for wild game. The Agreement was for a period of five years and was not transferable.

Subsequently, appellee arranged for appellant to cut hay on the property covered by the Agreement on a fifty-fifty basis. They later agreed to farm the acreage under the Agreement together and to divide the profits equally. The Game and Fish Commission was aware of the arrangement between these parties, but informed them that only Davis' name could be on the Agreement and he would remain solely responsible to the Commission. Appellant and appellee farmed the property together until the winter of 1977, when appellee told the appellant that he could no longer continue the operation due to ill health. Appellee sold his equipment and his interest under the Agreement to a third party, George Tencleve, but remained the responsible party under the agreement with the Game and Fish Commission.

Appellant and Tencleve continued under the same arrangement as appellee and appellant except that they divided the acreage and harvested the crops independently of each other.

On January 20, 1978, appellee gave notice to appellant to vacate the property and brought an unlawful detainer suit when appellant failed to vacate. Appellant filed a counter-claim for damages, alleging that their agreement was to continue over the entire five years of the Co-operative Farming Agreement. The trial court, sitting as a jury, found for the appellee and ordered that possession of the disputed property be confirmed in the appellee. Appellant now brings this appeal.

Appellant's first point for reversal is that the trial court erred in failing to find that an oral five year contract existed between the parties. He concedes that an oral agreement in excess of one year comes within the purview of the Statute of Frauds, but contends that partial performance renders the agreement enforceable. Ark. Stat. Ann. § 38-101 (Repl. 1962).

Many cases are cited by appellant for the rule that par-

tial performance takes the contract out of the Statute of Frauds. *Phillips* v. *Grubb*, 112 Ark. 562, 167 S.W. 102 (1914) involved a situation where plaintiff brought an unlawful detainer action against defendant, alleging that defendant was a tenant of plaintiff's under an oral contract and that he unlawfully detained the property after the expiration of the term. The facts were that the parties had entered into an oral contract to rent a farm for a period of five years for an annual rent of $600. Defendant took possession of the land and made valuable improvements for two years. Then this action was brought. The Chancellor held that defendant was rightfully in possesssion and the Arkansas Supreme Court agreed, stating that paying the rent for two years and making valuable improvements on the property took the contract out of the operation of the Statute of Frauds.

In *City National Bank* v. *Fite*, 186 Ark. 266, 53 S.W. 2d 440 (1932), the Arkansas Supreme Court held that when a lessee entered possession of the farm, made valuable improvements theron, had planted, cultivated and gathered the cotton crop three years in a row and paid the rent in accordance with a five year oral contract, then partial performance took the case out of the Statute of Frauds.

In *Marshall* v. *McCrary*, 241 Ark. 184, 406 S.W. 2d 863 (1966), the Supreme Court found partial performance in the fact that appellant had made numerous payments to appellee sufficient to take an oral contract for the sale of land out of the Statute of Frauds. In *Lake Village Implement Company* v. *Cox*, 252 Ark. 224, 478 S.W. 2d 36 (1972), the court held that an oral contract for the sale of farm equipment was not within the Statute of Frauds where the equipment had been delivered and received by the purchaser and part of the purchase price had been paid.

However, all of the cases cited by appellant contained a distinct oral agreement for a certain time and a designated plan for the payment of rent or purchase price under the agreement. In the case before us, there was a disputed factual issue as to whether there was any continuing agreement between the parties and there was no clear understanding as to their respective duties or the conditions of operation. The trial

court resolved the disputed issue in favor of the appellee and we regard that finding as consistent with the evidence. As the court stated, the parties had a "loose agreement" at best and while they may have had in mind participating over the span of five years, an express agreement to that effect was not established by the evidence. Where the evidence is in dispute or permits differing conclusions, the trial judge is in a better position than the appellate court to draw inferences and make findings necessary to a just result, hence, the rule that we affirm his decision if there is any substantial evidence to support it. It is sometimes said that the appellate court need consider only the testimony in favor of appellee. *Love* v. *H. F. Construction Company*, 261 Ark. 831, 552 S.W. 2d 15 (1977).

Appellant's second point, in the alternative, is that the court erred in failing to find that a landlord-tenant relationship existed between appellant and appellee. He argues that when appellee and Tencleve reached their agreement, a year-to-year tenancy was established between appellee and appellant which requires the landlord to give notice to vacate on or before July 1, the month when the agreement as initially made.

Appellant cites *Lacy* v. *Brickey*, 245 Ark. 860, 435 S.W. 2d 443 (1968), for this point. In *Lacy*, appellants argued that the trial court erred in treating the contractual relation between the parties as a tenancy from year-to-year. The Supreme Court disagreed and affirmed the trial court, stating that appellee farmed the property subject to the dispute under an oral agreement from 1949 to 1963, that rent was paid on an annual basis, regularly, and that upon the undisputed facts the tenancy could only have been one from year-to-year.

The trial court addressed this issue in its findings and cited the case of *Johnson* v. *Mantooth*, 108 Ark. 36, 156 S.W. 448 (1913). In that case, the Arkansas Supreme Court held that where the owner of land makes a contract with another, whereby the latter is to cultivate the land and the crops produced are to be divided between the two parties, the relation of landlord and tenant may or may not result. The question is one of intention to be determined by the language used by the parties and their acts in carrying out the contract

when such contract is oral. The Arkansas Supreme Court noted that the answer of defendant alleged that defendant was in possession under an oral contract, that he was to have possession for the year 1912 for the purpose of cultivating and growing crops and that the profits were to be divided evenly between appellant and appellee. Hence, the court found that there was a disputed factual issue and reversed a demurrer to defendant's answer.

In the case before us, there is a disputed factual issue on this point. As we have said, the trial judge noted that after the initial agreement to cut and divide the hay, the parties continued to operate without a clear understanding as to duration or what each was to contribute. Under these circumstances, we find that there was substantial evidence to support the court's finding. Moreover, it is highly questionable whether a landlord-tenant relationship could have existed between these parties to lands belonging to Game and Fish Commission, irrespective of their intent and appellant has offered no authority that such a relationship was created. The case of *Love* v. *Cahn*, 93 Ark. 215, 124 S.W. 259 (1909) describes the essential elements of a landlord-tenant relationship:

(1) Contract, either express or implied.

(2) The occupancy of the tenant must be in subordination to the rights of the landlord, and a reversionary interest must remain in the landlord.

(3) There must be a transmission of the estate to the tenant, and he must gain possession of the demised premises.

In 51 C.J.S. *Landlord and Tenant*, §2(2), it is stated:

It is inherent in the relation of landlord and tenant that the legal title to the land remains in the landlord and the tenant obtains only a usufructuary interest therein for the term of the tenancy.

Appellee, J. Sid Davis, had no legal title to the land, no

leasehold, nor even a proprietary interest. Hence, he had no estate to pass to appellant, which is one essential requirement of a landlord-tenant relationship. It follows that no such relationship arose between the parties and the court below was correct.

Appellant's third point for reversal is that the trial court erred in failing to assess damages for appellant. We need not address this point since appellant would only be entitled to damages if an enforceable contract existed. Since we uphold the findings of the trial court that there was no such contract, appellant's claim for damages is moot.

Affirmed.