Bill MORROW and Charles R. GOSLEE
v. FIRST NATIONAL BANK of
Hot Springs

76-417                                    550 S.W. 2d 429

Opinion delivered May 16, 1977
(Division I)

*Gibbs & Henry,* by: *Gary R. Gibbs,* for appellants.

*Wootton, Land & Matthews,* for appellee.

GEORGE ROSE SMITH, Justice. For a number of years before 1971 the two plaintiffs, Morrow and Goslee, collected coins, individually and as partners. In 1971 a substantial part of the collection was kept at Morrow's home in Hot Springs. On September 4 of that year someone broke into the house and stole coins valued at $32,155.17. Almost three years later the plaintiffs brought this action against the defendant bank to recover the value of the stolen coins. The complaint alleges a breach of contract, in that the bank failed to notify the plaintiffs of the availability, on August 30, 1971, of safety-deposit boxes in a new bank building. This appeal is from a summary judgment in favor of the bank.

We state the facts most favorably to the plaintiffs. Morrow collected coins for many years. In about 1964 he had metal cabinets built in a closet in his house, so arranged that a burglar would have to go through eleven sets of locks to reach the coins. In about 1969, as insurance rates were

becoming prohibitive, the two plaintiffs began to look for large safety-deposit boxes in which to keep their coins. No boxes were available in Hot Springs. From time to time Morrow discussed the problem with one or more employees of the defendant bank, where he was a regular customer.

In the summer of 1971 the bank was planning to move into its new building. Safety-deposit boxes were advertised. On June 25 the plaintiffs reserved three large boxes in the new building, paying $25 for each box. It was expected that the boxes would be available in from 30 to 60 days. Morrow explained his need for the boxes, adding that he particularly wanted them by September 1, when his husky teenage son would leave for college. The bank was perhaps on notice, through a loan application to a different department, that the coins were worth at least $12,000.

One or two employees of the bank promised to notify Morrow as soon as the boxes were available. The burglary occurred on the evening of Saturday, September 4, while Morrow and his wife were out to dinner. When Morrow inquired about the safety-deposit boxes on the following Tuesday, after Labor Day, he learned that the boxes had become available on August 30. An employee of the bank explained that "we just didn't have time" to notify Morrow that the boxes were ready. The plaintiffs immediately moved the rest of their coins into the safety-deposit boxes. We do not reach the bank's argument that the plaintiffs' acceptance of the rental contract was a waiver of their right to claim a breach.

We consider this case to be controlled by our holding in *Hooks Smelting Co. v. Planters' Compress Co.,* 72 Ark. 275, 79 S.W. 1052 (1904). There we adopted what is now known as the "tacit agreement test" for the recovery of consequential damages for a breach of contract. By that test the plaintiff must prove more than the defendant's mere knowledge that a breach of contract will entail special damages to the plaintiff. It must also appear that the defendant at least tacitly agreed to assume responsibility. Justice Riddick's entire opinion in *Hooks* is enlightening, but we emphasize this particular language:

It seems then that mere notice is not always suf-

ficient to impose on the party who breaks a contract damages arising by reason of special circumstances, and the reason why this is so was referred to in a recent decision by the supreme court of the United States. In that case Mr. Justice Holmes, who delivered the opinion of the court, after remarking that one who makes a contract usually contemplates performance, not a breach, of his contract, said: "The extent of liability in such cases is likely to be within his contemplation, and whether it is or not, should be worked out on terms which it fairly may be presumed he would have assented to if they had been presented to his mind." *Globe Refining Co.* v. *Landa Oil Co.*, 190 U.S. 540.

Now, where the damages arise from special circumstances, and are so large as to be out of proportion to the consideration agreed to be paid for the services to be rendered under the contract, it raises a doubt at once as to whether the party would have assented to such a liability had it been called to his attention at the making of the contract unless the consideration to be paid was also raised so as to correspond in some respect to the liability assumed. To make him liable for the special damages in such a case, there must not only be knowledge of the special circumstances, but such knowledge "must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it." In other words, where there is no express contract to pay such special damages, the facts and circumstances in proof must be such as to make it reasonable for the judge or jury trying the case to believe that the party at the time of the contract tacitly consented to be bound to more than ordinary damages in case of default on his part. Wills, J., in *British Columbia Sawmill Co.* v. *Nettleship*, L. R. 3 C.P. 235; *Globe Refining Co.* v. *Landa Oil Co.*, 190 U.S. 540; *McKinnon* v. *McEwan*, 48 Mich. 106, 11 N.W. 828; *Snell* v. *Cottingham*, 72 Ill. 161; *Horne* v. *Midland R. Co.*, L. R. 8 C. P. 131; *Booth* v. *Mill Co.*, 60 N. Y. 487; Wood's Mayne on Damages (1st Am. Ed.), p. 50; 1 Sutherland on Damages, § 52; 8 Am. & Eng. Enc. Law (2d Ed.), 593.

that the bank, in return for box rentals of $75, agreed in effect to issue a burglary insurance policy to the plaintiffs in the amount of at least $32,155.17 and probably much more, as the actual loss was only partial. The bank's bare promise to notify the plaintiffs as soon as the boxes were available did not amount to a tacit agreement that the bank, for no consideration in addition to its regular rental for the boxes, would be liable for as much as $32,000 if the promised notice was not given.

The tacit agreement rule is a minority rule, but we think it to be sound. We did not lightly adopt it. To the contrary, we relied upon three textbooks and a number of decisions, including one written by Justice Holmes. This language from the *Hooks* opinion expresses what Holmes described as "common sense":

> Suppose, for instance, that a large manufacturing establishment is driven by power from a single engine, and that, by reason of an accident to some small but important part of the engine or machinery, it becomes necessary to stop the operation of the whole plant until a new part can be made or the old one repaired. If thereupon a blacksmith or machinist is called in, and, for the price of a few dollars, undertakes to make the repairs, but through some mistake or unskillfulness the part supplied by him should fail to fit, requiring it to be remade and entailing still further delay, would any court hold that the blacksmith or machinist could be held liable for all the damages entailed by the delay when they were large, in the absence of a contract on his part to be thus liable, unless the notice and the circumstances under which he made the contract were such that he ought reasonably to have known that in the event of his failure to perform his contract the other party would look to him to make good the loss?

The tacit agreement test, to be sure, has been questioned and was rejected by the draftsmen of the Uniform Commercial Code. Ark. Stat. Ann. § 85-2-715 and Comment 2 (Add. 1961); Williston, Contracts, § 1357 (3d ed., 1968); Casenote, 18 Ark. L. Rev. 169 (1964). We do not attach great impor-

tance to the Commercial Code provision, simply because the legislature, in adopting a uniform act containing hundreds of sections, certainly did not specifically and consciously decide that the rule of the *Hooks* case should be changed in all situations. We adhere to that decision.

Alternatively, the plaintiffs argue that the bank's breach of its contract should be treated as a tort, for which liability may be imposed without regard to the tacit agreement test. As Prosser points out, a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguished from an affirmatively wrongful act (misfeasance). Prosser, Torts, § 92 (4th ed., 1971). Prosser notes that there is an exception with regard to a person such as an innkeeper or public warehouseman, who is under a duty to serve all comers. A bank, however, may do business with whom it pleases. Michie, Banks and Banking, Ch. 9, § 13 (rev. ed., 1973).

Affirmed.

We agree. HARRIS, C.J., and HOLT and ROY, JJ.