## Don McCLELLAN, d/b/a McCLELLAN AGENCY *v.* Michael BROWN, d/b/a BROWN RAILROAD CONSTRUCTION COMPANY

82-44                                          632 S.W.2d 406

Supreme Court of Arkansas
Opinion delivered May 3, 1982
[Rehearing denied June 1, 1982.]

*The Strother Firm,* by: *Lane H. Strother* and *Judith C. Strother,* for appellant.

*Henry J. Osterloh,* for appellee.

GEORGE ROSE SMITH, Justice. For a year or two the plaintiff Brown, engaged in a construction business, obtained his various types of insurance through the defendant McClellan's insurance agency. On April 21, 1978, Brown paid McClellan $1,856 for workers' compensation coverage on Brown's employees, but McClellan failed to obtain the necessary policies, though he represented to Brown that he had done so. As a result of the omission Brown was compelled to pay $17,120 to an injured employee, plus legal fees and costs.

Brown, in asserting this claim for actual and punitive damages, alleged that McClellan's "acts were willful and wanton in that defendant failed to pay the premium even though he had been paid" by Brown. McClellan's liability for Brown's actual damages is not questioned. With regard to the claim of punitive damages the trial judge, sitting without a jury, allowed Brown to call witnesses who had been dissatisfied with McClellan's handling of their insurance coverage and allowed McClellan to call witnesses to express their satisfaction with his services. At the conclusion of the testimony the court orally made these findings:

> This Court finds that there was willful, wanton, and malicious conduct on the part of the defendant. And frankly, it appears to the Court that what the defendant may well have done was to have gambled. The truth of the matter is that when he accepted eighteen hundred and fifty-six dollars from the plaintiffs, he cashed the money and did not provide coverage and did not return the money, he was in fact guilty of a crime. Theft of property.

(The court, in referring to the possibility that McClellan had gambled, apparently meant that McClellan may have taken a deliberate risk by leaving Brown uninsured in the hope that no compensable injury to his employees would occur.)

Counsel for the appellee declares in his brief: "The instant case is not a contract action, it is a tort action and always has been." We are at a loss to understand how it can be called a tort action. Prosser points out how difficult it is to frame a complete definition of a tort. Prosser on Torts, § 1 (4th ed., 1971). In general, the law of torts provides redress for various injuries; the purpose of the law of contracts is to see that promises are performed. *Atkins Pickle Co.* v. *Burrough-Uerling-Brasuell*, 275 Ark. 135, 628 S.W.2d 9 (1982). We have followed Prosser's view that a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguished from an affirmatively wrongful act (misfeasance). *Morrow* v. *First Nat. Bank of Hot Springs*, 261 Ark. 568, 550 S.W.2d 429 (1977). In our opinion the present case is plainly an action for breach of contract, there being no duty on McClellan's part except to perform his promise to obtain insurance coverage for Brown.

Punitive damages are not ordinarily recoverable for breach of contract. *Snow* v. *Grace*, 25 Ark. 570 (1869). In adhering to that principle we have said: "To support a claim for punitive damages there would have to be a willful or malicious act in connection with a contract. A bare allegation of fraud which results in a monetary loss would not justify punitive damages and that is essentially what the complaint alleges in this case." *Curtis* v. *Partain*, 272 Ark. 400, 614 S.W.2d 671 (1981).

The trial judge doubtless believed that McClellan acted dishonestly in not obtaining insurance for Brown and in later assuring Brown that he was protected, but McClellan's misuse of the money was not criminal theft. If commercial transactions are to have validity, it is essential that money be truly negotiable. No matter whether McClellan used Brown's premium payment to pay his own debts, to support his family, to make a church contribution, or to bet on a horse race, the bare misuse of the money was not a tort or a crime.

Granted that McClellan acted intentionally in not obtaining workers' compensation coverage and in telling Brown that he had done so, the issue is still whether his

action was so *willful* within the intent of our holding in *Curtis* (malice not being indicated in the case at bar) as to justify the imposition of punitive damages. Since any intentional act may be referred to as "willful," we must always consider circumstances other than the wrongdoer's intention to do what he did, in order to determine whether punitive damages are appropriate.

An excellent discussion of basic principles underlying the imposition of punitive damages is contained in Justice Schaefer's opinion in *Mattyasovszky* v. *West Towns Bus Co.*, 61 Ill. 2d 31, 330 N.E.2d 509 (1975). After first noting that punitive damages are awarded "to punish the offender and to discourage other offenses," the court examined the reasons and justification for such awards:

> The underlying strength of these objectives of punishment and deterrence varies substantially from case to case. Where, for example, the defendant has benefited by his misconduct, a judgment which only compensates the plaintiff for what he has lost would permit the defendant to keep his wrongful gain. Apart from such cases, the situations in which punitive damages become an issue cover a broad spectrum that ranges from the intentional tort which is also a crime [citation omitted], to what we characterize today as "willful and wanton" conduct, a characterization that shades imperceptibly into simple negligence.

> The objectives of an award of punitive damages are the same as those which motivate the criminal law — punishment and deterrence. Yet in a criminal case the conduct which gives rise to the imposition of punishment must be clearly defined. That is not so when the question is whether the conduct of the defendant can be characterized as either negligence or as willful and wanton conduct. The fine that is imposed upon the defendant in a criminal case goes to the State. But in a civil case the exaction taken from the defendant, under the label of exemplary damages, becomes a windfall for the plaintiff. The maximum and minimum amounts of the fine imposed by way of

punishment and deterrence in a criminal case are fixed by statute. In the civil case, however, the jury is left at large to take from the defendant and deliver to the plaintiff such amount as it sees fit.

Here we do not have a typical situation mentioned by Schaefer, in which the wrongdoer retains a wrongful gain after the payment of compensatory damages. To the contrary, not only must McClellan pay in compensatory damages some $15,000 more than the possible gain from his misconduct, he has also surrendered his license as an insurance agent. Hence in the case at bar compensatory damages also inflict punishment.

There remains the deterrent effect of the trial court's award of punitive damages. In *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 1045, 479 S.W.2d 518 (1972), we quoted an observation in a New York opinion, that one who acts out of anger or hate in committing assault or libel is not likely to be deterred by the fear of punitive damages. Similarly, an insurance agent who risks the loss of ten or fifty times his possible gain, and the loss of his livelihood as well, is not apt to be deterred by the fear of punitive damages.

In *Ray Dodge* we sustained an award of punitive damages against a used-car dealer who had turned back an odometer reading to make the vehicle's mileage appear smaller than it really was. We pointed out, however, that compensatory damages in an occasional lawsuit of that kind would not deter other used-car dealers from victimizing thousands of other purchasers. In the present case the deterrent effect of punitive damages would be negligible. On the minus side, if such damages were permitted the testimony might range far afield, as it did here, with 13 witnesses being called to testify whether McClellan had treated them well or badly in earlier unrelated transactions.

We find little persuasive force in two Georgia cases having somewhat similar fact situations. In the first case the court did not even discuss punitive damages, merely mentioning in passing that the jury had awarded compensatory and punitive damages. *Patterson* v. *Castellaw,* 119 Ga. App.

712, 168 S.E.2d 838 (1969). In the second case the court said that punitive damages can be awarded (in Georgia) upon proof of "that entire want of care which would raise the presumption of a conscious indifference to consequences." *Speir Ins. Agency* v. *Lee*, 158 Ga. App. 512, 281 S.E.2d 279 (1981). That language describes mere recklessness, which is not a ground for the exaction of punitive damages in Arkansas.

The award of punitive damages is set aside and that cause of action dismissed.

PURTLE, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I believe the trial court was entirely correct in awarding punitive damages. First, the pleadings and proof were sufficient to support a cause of action in tort and, second, under the circumstances of this case, punitive damages are appropriate to a cause of action for breach of contract, I agree that ordinarily punitive damages are not recoverable in breach of contract cases, but the rule is not absolute and there are exceptions. The elements that make this case exceptional are found in the fact that the breach of contract was accompanied by intentionally dishonest acts by the appellant for his own personal gain.

Actions brought by an insured for breach of duty owing to him by an insurance agent may be laid in contract or in tort. 44 C.J.S. Insurance 172b, p. 863. By amended complaint Brown alleged "willful and wanton" conduct on McClellan's part and prayed for punitive damages. The trial court expressly found McClellan had acted willfully, wantonly and maliciously in twice misappropriating Brown's insurance premium payments while representing to him that he was covered. Thus, elements of a cause of action sounding in both tort and contract were pleaded and proved at trial. The trial court also found McClellan's actions in placing Brown's premium payment in his own personal account while representing that he had paid the insurance company

amounted to theft. The majority opinion discounts McClellan's intentional dishonesty, focusing only on his breach of contract. In fact, the majority treats McClellan exactly as if he had been merely negligent.

The effect of the majority opinion is to allow an insurance agent by practicing a fraud and deception upon his principal, to act as an insurance carrier, gambling that no loss will occur. Since an individual agent rarely has the financial reserves of an insurance carrier, the likelihood that in the event of a loss the "insured" will not be compensated, is greatly increased. Public policy demands such practices be penalized.

Assuming, for the sake of argument, that appellee's cause of action is based solely on contract, recovery of punitive damages will still lie where the breaching party's conduct is willful and malicious. *Curtis* v. *Partain,* 272 Ark. 400, 614 S.W.2d 671 (1980). Also, where breach of contract includes elements that enable the court to regard the case as falling within the field of tort, or closely analogous, punitive damages may be awarded by way of punishment. 5 *Corbin on Contracts* § 1077 at 439. "Thus where the acts constituting a breach of contract also amount to a cause of action in tort, there may be recovery for exemplary damages on proper allegations and proof." 25 C.J.S. Damages § 120 at 1128.

> As a general rule, damages for breach of contract are limited to the pecuniary loss sustained. . . . This rule does not obtain, however, in those exceptional cases where the breach amounts to an independent, willful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness or oppression. 22 Am. Jur. 2d Damages § 245 at 337.

The cases cited in the majority opinion are distinguishable from the case under review. In *Morrow* v. *First Nat. Bank of Hot Springs,* 261 Ark. 568, 550 S.W.2d 429 (1977), no intentional wrongful acts were alleged or proven. In *Curtis* v. *Partain, supra,* this court said punitive damages may lie in

a breach of contract action, but there the plaintiff had waived punitive damages by seeking them against only one of four co-defendants involved in the same scheme and because there was no claim of willful or malicious conduct.

Other cases recognize punitive damages are appropriate where, as here, an agent maliciously breaches a duty to his principal based on contract. *Brown* v. *Coates,* 102 App. DC 300, 253 F. 2d 36, 67 ALR 2d 943 (1958). *See also* 67 ALR 2d 952. In *Brown* a real estate broker acted fraudulently in conveying his client's house to himself without applying the value of the equity toward the client's purchase of a second house as he represented he would do. The court said:

> . . . [O]nce it has been shown that one trained and experienced holds himself out to the public as worthy to be trusted for hire to perform services for others, and these so invited do place their trust and confidence, and that trust is intentionally and consciously disregarded, and exploited for unwarranted gain, community protection, as well as that of victim, warrants the imposition of punitive damages. (At 950.)

And at 949:

> We believe the better view in certain, narrowly defined circumstances, where a breach of contract merges with, and assumes the character of a willful tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust punitive damages may be assessed.

In *Speir Insurance Agency, Inc.* v. *Lee,* 281 S.E.2d 279 (1981), the Court of Appeals of Georgia upheld an award of punitive damages in an action for breach of contract brought by the insured against an insurance agent upon proof the agent had issued a binder insuring the plaintiff's automobile with American Reserve for $500 from July 15, 1978, to July 5, 1979. On August 11, 1978, American Reserve notified the agent the binder had expired "pending receipt of additional information" from the agent. The agent failed to obtain additional coverage and also failed to refund the

unused portion of the $500 payment, and on September 2, 1978, the plaintiff was involved in an automobile collision without coverage. Upholding the trial court's award of punitive damages the court said:

> To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. *Southern R. Co. v. O'Bryan*, 119 Ga. 147 (1), 45 S.E. 1000 (1903). Under the circumstances in this case the trial court was authorized to impose punitive damages against Speir. See *Patterson v. Castellaw*, 119 Ga. App. 712(1), 168 S.W.2d 838 (1969).

Similarly, in *Patterson v. Castellaw*, 168 S.E.2d 838 (1969), the same court in an action for deceit held an insurance broker was liable for compensatory and punitive damages to a plaintiff by accepting an insurance premium and causing him to believe his automobile was covered against theft when in fact it was not. The broker was found to have willfully misrepresented to a second broker, also acting for the plaintiff in attempting to secure coverage, that he had placed a binder on the automobile which was knowingly false and made to induce placement of the insurance through his own firm.

The Supreme Court of Alabama in *Proctor Agency, Inc. v. Anderson*, 358 So. 2d 164 (1978), set aside an award of punitive damages against an insurance agent who, when asked by his insured if he was covered for the costs of corrective surgery for an inguinal hernia under his policy with St. Paul Fire & Marine, told the insured to go ahead and have the operation. Coverage was denied by St. Paul and a jury awarded punitive damages which the Supreme Court disallowed, saying there was no evidence the agent's misrepresentation was committed with an intention to injure and defraud. But, significantly, the opinion recognizes that punitive damages will lie where, as here, an agent misrepresents coverage with an intention to injure or deceive the insured.

In sum, I believe the majority opinion errs in concluding that an agent who is guilty of intentionally dishonest acts against his principal for his own gain cannot be punished by punitive damages if the suit is basically for breach of contract; in necessarily concluding, though without discussion of the issue, that the trial court lacked discretionary power to treat the pleadings and proof as sounding in tort rather than in contract; and, in effect, disregarding the fact that punitive damages are intended to punish a wrongdoer rather than to compensate an injured party. *Ray Dodge* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972); *Holmes* v. *Hollingsworth,* 234 Ark. 347, 352 S.W.2d 96 (1961); *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S.W.2d 613 (1960).

I would affirm the judgment.