Sheila D. WINNINGHAM,
Plaintiff-Appellee,

v.

CENTENNIAL INSURANCE
COMPANY,
Defendant-Appellant.

No. 82–8312.

United States Court of Appeals,
Eleventh Circuit.

July 1, 1983.

John R. Gaughen, Bright Kinnett Wright, Atlanta, Ga., for defendant-appellant.

James A. Elkins, Jr., Columbus, Ga., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and GIBSON*, Senior Circuit Judge.

PER CURIAM:

In this diversity action on a homeowner's fire insurance policy, the only issue on ap-

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

peal concerns the jury award to the plaintiff-insured, Sheila Winningham, of $20,000 as a bad faith penalty and $5,800 in attorney's fees. Agreeing with the defendant-insurer, Centennial Insurance Company, that there was insufficient evidence to support a finding of bad faith on the part of the insurance company, we reverse.

◼ Both sides agree that Georgia law set the standard by which the penalty and attorneys fees could be awarded. In Georgia, this additional liability is not automatically imposed on an insurance company every time it refuses to pay the underlying claim prior to trial and the insured successfully litigates the dispute. Instead, the insurer is liable for the penalty and attorney's fees only if it acts in "bad faith" in refusing to pay the claim. Official Code of Georgia Ann. § 33–4–6 (1982), formerly Ga.Code Ann. § 56–1206 (1977); *see Developments in Georgia Law-Insurance, Wrongful Refusal to Pay Insurance Claims in Georgia,* 13 Ga.L.Rev. 935, 951–52 (1979). The burden of proof is on the insured to establish bad faith. *See Interstate Life & Accident Insurance Co. v. Williamson,* 220 Ga. 323, 138 S.E.2d 668, 670 (1964). The Georgia test for bad faith is whether the insurer had "reasonable and probable cause" for defending against the claim. *Colonial Life & Accident Insurance Co. v. McClain,* 243 Ga. 263, 253 S.E.2d 745, 746 (1979); *Interstate Life & Accident Insurance Co. v. Williamson,* 138 S.E.2d at 670; *Travelers' Insurance Co. v. Sheppard,* 85 Ga. 751, 12 S.E. 18, 23 (1890). A "defense bars a finding of bad faith [if] [i]t . . . raises a reasonable question of law or a reasonable issue of fact even though not accepted by the trial court or jury." *Colonial Life & Accident Insurance Co. v. McClain,* 253 S.E.2d at 746.

The issue, therefore, is whether the record compels a finding that the insurance company had a reasonable basis for litigating, rather than paying, the claim. Since the insurer never contested its liability, the question is whether it had a reasonable basis for defending the amount of the claim. A review of the evidence must focus on the prelitigation demands of the plain-

tiff, the offer of payment by the insurance company, and the ultimate jury decision as to the amount due. *See Developments in Georgia Law-Insurance, Wrongful Refusal to Pay Insurance Claims in Georgia,* 13 Ga. L.Rev. at 962.

On October 31, 1980 a fire severely damaged Winningham's house in Columbus, Georgia. The residence was insured under a homeowner's policy issued by Centennial, with coverage limits of $120,000 for the dwelling, $60,000 for unscheduled personal property, $48,766 for scheduled personal property and $24,000 for additional living expenses. Winningham filed a claim with Centennial, asking $220,328 with $110,625 for loss to the dwelling, $84,951 for personal property damage and approximately $24,-742 for additional living expenses. Although Centennial acknowledged its liability under the policy, it disputed the amount claimed for dwelling damage and additional living expenses. A contractor informed Centennial that he could repair the house for approximately $99,627, and Winningham allegedly provided verification for only around $5,589 in additional living expenses. Accordingly, Centennial refused to pay the full amount demanded, making a series of lower offers.

The final offer prior to the filing of the lawsuit amounted to $169,150, with $83,000 for the dwelling, $5,000 for additional living expenses, and $81,150 for personal property. Evidently believing that Winningham did not intend to rebuild the house, Centennial offered $83,000 for the dwelling damage, rather than its estimate of $99,627 to repair, because the insurance policy provided for depreciation in the event repairs were not undertaken.

Dissatisfied with Centennial's offer, Winningham made a counter-offer and, when no agreement could be reached, finally filed suit on November 2, 1981. In her complaint, she requested the same amount as she had in her initial claim filed with Centennial, except she lowered the additional living expenses demanded to $16,000 and added a prayer for a 25% bad faith penalty plus reasonable attorney's fees. In its an-

swer, Centennial admitted liability in the amounts of $83,923.96 for the house, $84,951.00 for the personal property, and $5,588.68 for additional living expenses. Thus, prior to trial, the parties had narrowed their disagreement to around $37,112 exclusive of any bad faith penalty and attorney's fees, with Centennial offering approximately $174,464 and Winningham requesting $211,576.

At trial, both sides presented evidence in support of their respective positions. On behalf of Centennial the independent contractor testified to his estimate of around $99,627 to repair the damage. On cross-examination a Centennial claims representative testified that depreciation accounted for the difference of nearly $16,000 between the repair estimate and Centennial's admitted liability of approximately $83,924 for the dwelling. The claims representative acknowledged that if Winningham had rebuilt the home, the insurance company also would have been liable for the additional $16,000. A second contractor testified on behalf of Winningham that he had estimated the cost of repair to be $110,625, the amount Winningham had requested throughout the dispute. Winningham also called another contractor and a real estate broker who testified that the value of the house, after subtracting the value of the vacant lot, was between $110,000 and $115,000. With respect to additional living expenses, Winningham testified that she incurred around $8,000 in costs, and the parties presented conflicting evidence as to whether Winningham had provided adequate documentation for the major claim not allowed, laundry and cleaning costs. The parties stipulated that Winningham was entitled to $84,951 in personal property damage.

The jury awarded Winningham $203,597.79 in general damages, $7,978.21 less than Winningham had requested in her complaint and $29,134.15 more than Centennial had admitted as its liability in its answer. The jury added a $20,000 bad faith penalty and $5,800 in attorney's fees.

■ We believe that Georgia law requires reversal on this appeal. Winningham presented evidence supporting her request of over $110,000 for damage to the house, but she presented no evidence suggesting Centennial acted in bad faith in refusing to pay that much. Centennial based its final offer of $83,000 on an assessment of the cost of repairs furnished by an independent contractor, and on the depreciation clause of the policy. The evidence did not establish that Centennial knew or should have known the contractor's estimate was too low, or that Centennial applied the depreciation clause in an unreasonable manner. Rather, the testimony merely established that, based in large part on two disparate estimates of the cost to repair and perhaps on differing readings of the policy in regard to depreciation, a bonafide dispute existed as to the extent of Centennial's liability for the dwelling. As a matter of law no bad faith penalty could be imposed.

> Where there is a reasonable basis for so doing, an insurer is entitled to maintain and defend its position as to the amount of its liability without the imposition of penalty and attorney's fees, even if doing so results in considerable delay in bringing the matter to a conclusion.

*Georgia Farm Bureau Mutual Insurance Co. v. Boney,* 113 Ga.App. 459, 148 S.E.2d 457, 460 (1966) (reversing imposition of bad faith penalty and attorney's fees even though insurer made substantially lower offer, based on repair estimate, than that demanded by insured and awarded by jury). *See also Georgia Farm Bureau Mutual Insurance Co. v. Mikell,* 126 Ga.App. 640, 191 S.E.2d 557, 559 (1972); *National Casualty Co. v. Dixon,* 114 Ga.App. 362, 151 S.E.2d 539, 540 (1966).

The policy provided that the insurance company had to pay only the cost to rebuild in the event repairs were feasible. Although the underwriting department at Centennial cancelled Winningham's policy because it termed the fire a "total loss," two independent contractors provided a Centennial claims adjustor with repair estimates, and the claims department acted

accordingly. Its decision to pay only repair costs appears to have been reasonable.

Besides Centennial's liability for damage to the dwelling, the only other subject of disagreement between the parties concerned additional living expenses. That Centennial had a reasonable basis for disputing Winningham's initial claim of approximately $24,000.00 is evident from Winningham's subsequent reduction of the amount requested to $16,000 in her complaint and to $8,646.79 in closing argument.

This is not a case in which the offer was so low that the jury could treat it as tantamount to an absolute, bad-faith refusal to pay. *See, e.g., Fireman's Insurance Co. v. Allmond,* 105 Ga.App. 763, 125 S.E.2d 545, 548 (1962) (jury could so treat a $2,250.00 offer when it determined the amount of loss to be nearly double that, $4,000.00). The $169,150.00 final offer amounted to nearly 85% of the jury award of $203,597.79. At oral argument, Winningham's counsel acknowledged being unaware of any Georgia case holding an offer, reasonably based as here on competent evidence, of 85% of the eventual award to be equivalent to a refusal to pay.

In attempting to prove at trial that Centennial had acted in bad faith, Winningham stressed the insurer's alleged failure to help her process her claim and the eight month delay between the fire and Centennial's first offer, which amounted to only $138,-000. One month after completing an investigation into whether Winningham had anything to do with the fire, however, Centennial made an offer. Winningham did not establish at trial that the investigation was undertaken in bad faith or that it lasted for an unusually long period of time. Further, the evidence suggests that Winningham was at least partly to blame for any delay because she failed promptly to submit an inventory of the damaged property. While the initial offer may seem low, Georgia law appears to focus on the insurer's position at trial, not before, in judging the reasonableness of the insurer's defending against the claim. Thus, in *Interstate Life & Accident Ins. Co. v. Williamson,* 220 Ga. 323, 138 S.E.2d 668 (1974), the Supreme Court of Georgia held that no bad faith penalty may be imposed if the insurance company asserts a reasonable defense at trial, even if it had no basis initially for refusing the claim. *See also Interstate Life & Accident Insurance Co. v. Williamson,* 110 Ga.App. 557, 139 S.E.2d 429, 431 (1964) ("The test of bad faith ... is at the time of trial ... and not at the time of refusal to pay upon demand.").

REVERSED.