## L. L. COLE & SON, INC. and Estate of Richard L. COLE *v.* Rickey HICKMAN

84-5                                    665 S.W.2d 278

Supreme Court of Arkansas
Opinion delivered March 12, 1984

*Fletcher C. Lewis,* for appellant.

*Daggett, Daggett & Van Dover,* by: *Doddridge M. Daggett,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, L. L. Cole & Son, Inc. leased two rice fields to appellee, Rickey Hickman, for the 1980 crop year. Appellee filed suit alleging in his complaint that during the term of the lease, appellant, Richard L. Cole, acting both individually and on behalf of L. L. Cole & Son, Inc., deliberately and maliciously (1) evicted Hickman from ricefield #1; (2) removed the keys from a diesel engine used to irrigate rice field #2 causing 90% damage to the rice crop because of lack of water; and (3) "pursued a course of conduct which was designed to, and did, harass, ridicule, and embarrass this plaintiff [appellee], both publicly and privately." Appellee then prayed for $30,000.00 in compensatory damages in regard to field #1 and $23,400.00 in compensatory damages in regard to field #2 and $500,000.00 punitive damages for "tortious breach of contract." A jury returned a verdict for Hickman in the amount of $42,270.00 compensatory damages and $275,000.00 punitive damages.

From this judgment appellant appeals, alleging six

points for reversal. On appeal we reverse in part and affirm in part.

Appellant first argues the trial court erred in not granting his motions for judgment n.o.v. and for a new trial. To support his allegation of error, appellant contends that (1) punitive damages were incorrectly allowed in this contract action; (2) substantial evidence to support the punitive damage award did not exist; and (3) the form of the punitive damage award instruction was incorrect.

The law has long recognized the view that a contracting party has the option to breach a contract and pay damages if it is more efficient to do so. Justice Holmes articulated this idea by stating, "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it — and nothing else." *O. Holmes*, "The Path of the Law," in Collected Legal Papers 167, 175 (1920). Ordinarily, punitive damages for breach of contract are not allowed. 5 *Corbin*, Contracts 438 (1964); 11 *Williston*, Contracts 210 (3d ed. 1968). This has traditionally been the law in Arkansas. *McClellan* v. *Brown*, 276 Ark. 28, 632 S.W.2d 406 (1982); *Curtis* v. *Partain*, 272 Ark. 400, 614 S.W.2d 671 (1981); *Snow* v. *Grace*, 25 Ark. 270 (1869).

Correspondingly, the law has long been in general agreement that a third party who intentionally, and with malice, interferes with the contractual relations of another incurs liability for his action in tort. *Lumley* v. *Gye*, 118 Eng. Rep. 749 (Q.B. 1853); *W. Prosser*, Handbook of the Law of Torts § 129 (4th ed. 1971). Such a tort is commonly termed "interference with contractual relations" or "tortious interference with contract," and has long been recognized in Arkansas. *Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). For a full discussion see *Dobbs, Dan B*, "Tortious Interference with Contractual Relationships," 34 Ark. L. Rev. 334. The elements of the tort of interference with contractual rights are thoroughly set out in *Walt Bennett Ford* v. *Pul Co. Spl. Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426. See also Restatement, (Second) of Torts § 766 (1979). Malice, or bad faith, is no longer in Arkansas an essential part of the plaintiff's case. See *Walt Bennett Ford*, Supplemental

Opinion on Petition for Rehearing, supra, and *Stebbins & Roberts Inc.* v. *Halsey*, 265 Ark. 903, 582 S.W.2d 266 (1979). Punitive damages for the tort of interference with contractual relations may be awarded.

The law as to the relation between these two causes of action, one in tort and one in contract, when one of the contracting parties breaches the contract by an intentional act causing damage to person or property presents a confusing field still in the process of development. Generally, a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguished from an affirmatively wrongful act (misfeasance). *Morrow* v. *First Nat. Bank of Hot Springs,* 261 Ark. 568, 550 S.W.2d 429 (1977). Also see *Prosser,* supra, § 92. The courts, however, have tended to extend the tort liability for misfeasance whenever the misconduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests. Ordinarily, where on the facts either an action in contract or one in tort is possible, the plaintiff must make a choice. *Prosser,* supra § 92. A plaintiff should either plead and prove his cause of action in contract or in tort. Since the purpose of the law of contracts is to see that promises are performed while the law of torts provides redress for various injuries, and since punitive damages are ordinarily not awarded in contract but may be awarded in tort, the distinction is an important one. Where on the facts the action may sound either in contract or tort or in both, the court itself will often seek to determine the real character of the action. See *Atkins Pickle Co.* v. *Burrough-Uerling-Brasuell,* 275 Ark. 135, 628 S.W.2d 9 (1982) and *Olsen* v. *Riddle,* 280 Ark. 535, 659 S.W.2d 759 (1983).

Such is the case at bar. In his complaint, appellee Hickman has mixed allegations arising from a breach of contract with allegations of incidents which could form the basis of a tort action but which could also be proof of a breach of contract. In his prayer, appellee Hickman prays for punitive damages for "tortious breach of contract." The record reflects confusion as to whether he is claiming damages for breach of contract, for tortious interference by Richard Cole with the contract negotiated between L. L.

Cole & Son, Inc. and Hickman, or for tortious misfeasance incidental to the breach of contract.

There have been cases decided by this court in which punitive damages were seemingly allowed in an action on the contract. However, in those cases, other factors, some disclosed and some not disclosed in the opinion, satisfied our requirement that punitive damages must be predicated on some tortious act. In other cases, this court has sought to determine whether the cause of action sounds more in contract or more in tort with varying results. In the case at bar, we conclude the action is one in contract. Punitive damages were, therefore, improperly awarded.

Prospectively, we hold that in actions where on the facts either an action in contract or one in tort is possible, the plaintiff must specifically plead and prove his cause of action in tort in order to be awarded punitive damages. Otherwise, the presumption will be that the action is in contract where punitive damages are not recoverable.

Second, appellant argues that the trial court erred in allowing $21,500 as compensatory damages for alleged loss of equity in equipment taken by repossession. Since the jury returned a general verdict in the amount of $42,270, there is no way to distinguish what amount was awarded for loss of equipment in connection with field #1 and what amount was awarded for loss of crop in connection with field #2. The record reflects that Hickman testified that when he entered into the farm lease with Cole in anticipation of planting rice he bought new equipment which he would not have bought had he known field #1 was going to be taken away from him. He further testified that he tried to find replacement land to farm, but that at the end of 1980 he was unable to make his equipment payments and had lost equity in the amount of $21,500.00. Owners of property may testify as to the value of the property for the purpose of determining damages. *Moore Ford Co. v. Smith*, 270 Ark. 340, 604 S.W.2d 943 (1980); *Garrett v. Trimune*, 254 Ark. 79, 491 S.W.2d 586 (1973). The evidence was undisputed that Hickman lost equity in equipment in the amount of $21,500. Appellants' only objection was to a jury instruction based on this testimony

on the ground that loss of equity was not the proper measure of damages. On appeal we view the evidence in the light most favorable to the appellee. There is substantial evidence to support the finding of the jury.

Third, appellant argues that the trial court erred in not granting his motions for mistrial and for new trial because of alleged misconduct of a juror and because of surprise resulting from change in the testimony of a witness. Mistrial is a drastic remedy. *Perry v. State,* 277 Ark. 357, 642 S.W.2d 865 (1982). Since appellant has not demonstrated that he was clearly prejudiced by these events, we cannot say the trial court abused its discretion in denying the request for a mistrial.

Fourth, appellant argues that the trial court erred in admitting parol evidence relating to the written farm lease between Hickman and L. L. Cole & Son, Inc. A term of the lease was a provision regarding the furnishing of a rice well. The parol testimony was admitted to explain what was meant by that term. The parol evidence rule does not preclude an oral explanation of an ambiguity in an agreement. *Blount v. McCurdy,* 267 Ark. 989, 593 S.W.2d 468 (1980). There was no error.

Fifth, appellant argues the trial court erred in its refusal to admit testimony of two defense witnesses who offered statements of Richard Cole (deceased at the time of trial) which were self-serving as to Cole. Statements, other than those made at trial by the declarant, offered in evidence to prove the truth of the matter asserted are hearsay and are therefore inadmissible. Ark. Unif. R. of Evid. 801(c); *Gautney v. Rapley,* 2 Ark. App. 116, 617 S.W.2d 377 (1981). The trial court properly excluded this testimony.

Affirmed in part; reversed in part.

GEORGE ROSE SMITH, HICKMAN, HAYS and HOLLINGS-WORTH, JJ., concur in part and dissent in part.

DARRELL HICKMAN, Justice, concurring in part; dissenting in part. There is no substantial evidence to support an

award of $21,500 for loss of "equity" in equipment. Hickman, the appellee, testified that he had "lost equity in his equipment," but he could only point to a disc that was repossessed at the time of the trial; he still had the other equipment. One cannot lose something one still has.

The appellants properly objected to an instruction which permitted the jury to consider this evidence. The equity must be lost, through repossession, to be a recoverable damage. See *Brickey* v. *Lacy,* 245 Ark. 860, 435 S.W.2d 443 (1968). Hickman had paid $1,500 on the disc; therefore, I would reduce the award of $21,500 for loss of equipment to $1,500.

GEORGE ROSE SMITH, J., joins in this opinion.

STEELE HAYS, Justice, concurring in part; dissenting in part. I have no disagreement with the court with respect to compensatory damages, but I do not agree that punitive damages were improperly awarded. To reach this conclusion the majority opinion largely skirts the facts while carefully examining the language of appellee's complaint to determine whether it sounds more nearly in tort than in contract and settles on the latter, citing *Atkins Pickle* v. *Burrough-Uerling-Brasuell,* 275 Ark. 135, 628 S.W.2d 9 (1982). But there is a marked difference between that case and the case before us. In *Atkins Pickle* v. *Burrough-Uerling-Brasuell,* the trial court had dismissed a suit by Atkins Pickle attempting to fix venue in Pope County, rather than in a county less to its liking, and thus the issue there hung by a thread on whether the cause of action was for injury to real property, which would establish venue in Pope County, or for breach of contract, which would place venue elsewhere.

Here the trial court held, correctly I think, that the proof sustained a submissible issue for the jury on punitive damages and on appeal the fine wording of the complaint should not concern us so much as whether under the appellee's pleading and proof punitive damages are recoverable under our law. Bearing in mind that we view the evidence in appellee's favor, I believe the punitive damages

were sustained on both counts, though without reference to the amount awarded, which I do not address.

We have recognized, as we should, that punitive damages may be recovered where the cause of action is essentially contractual in nature if accompanied by conduct which is willful or malicious. *McClellan* v. *Brown*, 276 Ark. 28, 632 S.W.2d 406 (1982); *Curtis* v. *Partain*, 272 Ark. 400, 614 S.W.2d 671 (1981); *Morrow, et al* v. *Hot Springs First National Bank*, 261 Ark. 568, 550 S.W.2d 429 (1977). This is the overwhelming view. Restatement of Contracts, Second, § 355, states the rule to be: "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." And this is said to be true in "almost every jurisdiciton in which the matter has been considered judicially or resolved legislatively." (See Punitive Damages, Law and Practice, Ghiardi and Kircher, § 5.16, citing some thirty-five jurisdictions.)

The remaining question is, was the breach of appellee's lease such as to give rise to a cause of action in tort? Only one answer is possible. Appellee alleged and proved facts which would be cognizable under either of two recognized torts, i.e. intentional infliction of mental distress (See Prosser, Law of Torts, 4th Ed., § 12, p. 49) and intentional interference with contractual rights. Prosser, § 129, and *Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969), where we upheld a cause of action for interference with a contract:

> The basic elements going into a prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."

Here, appellee's complaint accused the appellant of

14

"deliberately, maliciously and wantonly, in complete disregard for the property rights of the plaintiff," breaching the contract, alleging specific acts of interference; further, that appellant pursued a course of conduct toward the plaintiff designed to "harass, ridicule and embarrass the plaintiff;" that appellant would call plaintiff at hours between midnight and 2:00 a.m. and would "curse and abuse" him with the intent of causing emotional distress. The allegations fully state a cause of action in tort and the proof presented in trial sustained these allegations: The appellee testified that after being ordered off one of the two rice fields leased to him (after he had completed preparations for planting), he was subjected to intentional interference on the other field by the appellant, who removed the key to a relift pump, thereby depriving appellee's rice of water for three or four days, resulting in crop damage. Appellee testified that at various times, including "all hours of the night," the appellant would call him to threaten him in his efforts to produce a crop, using such terms as "liar, lazy, stupid and goddamn dog," in reference to the appellee. Granted, the law does not ordinarily protect the individual from harsh words alone, although there are exceptions [see *Fisher* v. *Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Texas, 1967)], but in this case the abusive language was coupled with affirmative, tortious conduct. The trial court correctly submitted the issue of punitive damages to the jury under the proof and the law.

Justice Hollingsworth joins in this dissent.